**Scanlon v South St. Seaport LP**

2024 NY Slip Op 33470(U)

October 1, 2024

Supreme Court, New York County

Docket Number: Index No. 155345/2020

Judge: Nicholas W. Moyne

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:  **HON. NICHOLAS W. MOYNE**                PART                **41M**

*Justice*

-----------------------------------------------------------------------X

MICHAEL SCANLON,

                          Plaintiff,

                   - v -

SOUTH STREET SEAPORT LIMITED PARTNERSHIP,
PLAZA CONSTRUCTION, LLC, SEAPORT MANAGEMENT
DEVELOPMENT COMPANY, LLC,

                          Defendant.

| | |
|---|---|
| INDEX NO. | 155345/2020 |
| MOTION DATE | 05/02/2023, 05/17/2023, 05/18/2023, 05/17/2023, 05/17/2023 |
| MOTION SEQ. NO. | 003 004 005 006 006 |

**DECISION + ORDER ON MOTION**

-----------------------------------------------------------------------X

SOUTH STREET SEAPORT LIMITED PARTNERSHIP,
SEAPORT MANAGEMENT DEVELOPMENT COMPANY, LLC,

                          Plaintiff,

                   -against-

KENVIL UNITED CORP., OCEAN STEEL & CONSTRUCTION
LTD

                          Defendant.

Third-Party
Index No. 595494/2022

-----------------------------------------------------------------------X

PLAZA CONSTRUCTION, LLC

                          Plaintiff,

                   -against-

KENVIL UNITED CORP., OCEAN STEEL & CONSTRUCTION
LTD

                          Defendant.

Second Third-Party
Index No. 595494/2022

-----------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 003) 82, 83, 84, 85, 86,
87, 88, 89, 90, 91, 92, 93, 94, 95, 163

were read on this motion to/for                   _____ JUDGMENT - SUMMARY _____ .

[* 1]

The following e-filed documents, listed by NYSCEF document number (Motion 004) 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 165, 167, 168, 169, 195

were read on this motion to/for                    SUMMARY JUDGMENT(AFTER JOINDER        .

The following e-filed documents, listed by NYSCEF document number (Motion 005) 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 166, 170, 171, 172, 176, 183, 186, 187, 188, 189, 193, 194, 196, 197, 198

were read on this motion to/for                    JUDGMENT - SUMMARY            .

The following e-filed documents, listed by NYSCEF document number (Motion 006) 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 164, 173, 174, 175, 177, 178, 179, 180, 181, 182, 184, 190, 191, 192

were read on this motion to/for                    JUDGMENT - SUMMARY            .

The following e-filed documents, listed by NYSCEF document number (Motion 006) 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 164, 173, 174, 175, 177, 178, 179, 180, 181, 182, 184, 190, 191, 192

were read on this motion to/for                    PARTIAL SUMMARY JUDGMENT        .

Upon the foregoing documents, it is

Motion sequences 003-006 are consolidated herein for decision. This action stems from an accident at a construction site that allegedly occurred on July 16, 2019. The plaintiff was an ironworker assigned to work on a project involving the construction of a building at the South Street Seaport Pier 17. The subject premises is owned by defendant South Street Seaport Limited Partnership and managed by defendant Seaport Management Development Company. The latter retained Plaza Construction ("Plaza") as the construction manager for the project. Plaza retained the services of Ocean Steel & Construction Ltd. ("Ocean") and assigned Ocean the task of fabricating and installing structural steel for the building. Ocean fabricated the steel but sub-contracted the installation to the plaintiff's employer, third-party defendant Kenvil United Corp. ("Kenvil").

At the time of his accident, the plaintiff was under the supervision of George Marcinkevich, a foreman employed by Kenvil. At the time of his accident, the plaintiff claims that he and a co-worker had been working on the first floor of the building. They were responsible for "bolting up," i.e., the steel members were initially connected with temporary bolts, so they were tasked with removing the temporary bolts and replacing them with permanent bolts. Prior to the accident, the plaintiff had accessed the first-floor work area via an orange extension ladder installed at the front of the building.

The plaintiff claims that prior to the accident he went down to the ground level in order to locate some bolts that he needed for the work he was doing. Plaintiff found the bolts and placed them in his tool bag and began traveling back to his work area. In order to get back to the first-floor work area, the plaintiff used a blue extension ladder. The blue extension ladder had previously been resting upright against a concrete floor

155345/2020  SCANLON, MICHAEL vs. HOWARD HUGHES CORPORATION
Motion No.  003 004 005 006 006

Page 2 of 13

[* 2]

when the plaintiff found it and began using it. The plaintiff described the blue ladder as the top half of an extension ladder that had been separated from the bottom half. According to the plaintiff, the bottom half of the blue extension ladder was in use at a different section of the job site, but it was close to the section of the ladder that the plaintiff was using when he was injured. The half-portion of the blue extension ladder used by the plaintiff was ten feet long and had about ten rungs. The base of the extension ladder half rested on a flat, poured concrete surface that was clean and free of any debris or liquids. (Ex. I, 39:21-23, 102:16-103:5). The base of the extension ladder half was three feet from the concrete wall, the top was leaning against the flat surface of the wall and two rungs extended beyond the deck at the top of the ladder. (Ex. I, 39:18-20, 105:2-17, 111:17-112:2). The blue extension ladder half did not have any rubber feet on the bottom to prevent slippage and was not secured or tied-off in any manner that would prevent it from sliding or slipping on the concreate floor.

As the plaintiff ascended the ladder, the ladder kicked or moved backwards causing the plaintiff to fall forward and hit his head against the concrete wall that the ladder was leaning against. The plaintiff claims that he fell to the ground and the ladder landed on his stomach. There were no witnesses to the accident. Following the accident, the plaintiff's co-worker Christopher Hald, who testified as a non-party, went to look for the plaintiff and noticed the ladder that the plaintiff was using at the time of the accident upright, but clearly out of position, askew. The ladder was not tied off and was straight up against the concrete wall. Before Mr. Hald could descend the ladder, he needed to move the ladder on an angle so that it was safe for him to descend. He testified that as he descended the ladder, he noticed that the ladder was wobbly and lacked any foundation or feet.

The plaintiff commenced an action against South Street Seaport Limited Partnership by service of a summons and complaint dated July 17, 2020. Issue was subsequently joined by the defendants South Street Seaport Limited Partnership's answer dated August 27, 2020. Thereafter, plaintiff commenced a separate second action by filing a Summons and Complaint against Plaza Construction and Seaport Management Development Company. Issue was joined by service of an answer by Seaport Management Development Company and Plaza Construction in the respective actions. The actions were later consolidated. Defendants, South Street Limited Partnership and Seaport Management Development Company (hereinafter "Seaport"). Thereafter, Plaza Construction, LLC., commenced a second third party action against Kenvil United Corp. and Ocean Steel & Construction LTD..

In motion sequence 003, Kenvil moves for summary judgment and a dismissal of all third-party claims and cross-claims against Kenvil for common-law indemnity and/or contribution. In motion sequence 004, Ocean moves for summary judgment on its cross-claim for contractual indemnification against Kenvil. In motion sequence 005, Seaport moves for summary judgment and dismissing those causes of action in plaintiff's complaint which allege negligence and a violation of Section 200 of the New York Labor Law and granting summary judgment to Seaport on their claims for contractual indemnification against Plaza, Ocean Steel and Kenvil. Plaza cross-moves for an order granting it summary judgment and dismissing plaintiff's claims against

155345/2020 SCANLON, MICHAEL vs. HOWARD HUGHES CORPORATION
Motion No. 003 004 005 006 006

Page 3 of 13

3 of 13

[* 3]

Plaza for negligence and a violation of Labor Law 200 and granting Plaza summary judgment on its claims for contractual indemnification against Ocean Steel and Kenvil. In motion sequence 006, plaintiff moves for partial summary judgment motion for partial summary judgment on plaintiff's Labor Law §240(1) cause of action against Seaport and Plaza.

### Motion Sequence 003

In motion sequence 003, Kenvil moves for summary judgment and a dismissal of all third-party claims and cross-claims against it for common-law indemnity and/or contribution. This motion is unopposed and is granted. Kenvil was the plaintiff's employer and claims for common-law indemnification and/or contribution against Kenvil are barred by the exclusive provisions of New York's Workers' Compensation Law §11 unless the injured plaintiff sustained a "grave injury" within the meaning of the statute or controlling case law. There is no indication in the record that the plaintiff sustained a qualifying grave injury within the meaning of the statute or controlling case law. Accordingly, the motion is granted and all third-party claims and cross-claims against Kenvil for common-law indemnity an/or contribution are dismissed.

### Motion Sequence 004

In motion sequence 004, Ocean Moves for summary judgment on its cross-claim for contractual indemnification against Kenvil.

By contract, dated April 24, 2018, between Ocean and Kenvil, Kenvil agreed to erect structural steel manufactured by Ocean for the subject project. William Gates, Vice President and General Manager of Ocean, authenticated the contract during his deposition. (See Contract, Exhibit "T" to Affirmation in Support of Motion; See Exhibit "R" to Affirmation in Support of Motion, pp. 20 - 23, lines 14-22). The contract provides, in relevant part, at Paragraph 4M:

> To the fullest extent permitted by law, Erector ("Kenvil "), shall defend, indemnify and save harmless Fabricator ("Ocean ")...from and against any claims, costs, expenses, damages, suits, fines, penalties and/or liabilities (including attorneys' fees and costs and attorneys' fees incurred in enforcing Erector's obligations set forth herein), caused by, arising out of, resulting from, or occurring in connection with (i) the Work, whether or not caused in part by the negligence or other fault of a party indemnified hereunder; (ii) any actions or suits concerning any of the foregoing in which any of the Indemnitees are made a party defendant; provided, however, Erector's duties set forth herein shall not arise if any such claim, cost, expense, damage, suit, penalty and/or liability is wholly caused by the sole negligence of a party indemnified hereunder.

It is undisputed that the plaintiff was working for Kenvil at the time of his accident. His job involved the removal and/or swapping out of bolts. The contract cited above clearly obligates Kenvil to indemnify Ocean for any claims arising out of the work contemplated in the contract between Ocean and Kenvil. Ocean maintains that the

**155345/2020  SCANLON, MICHAEL vs. HOWARD HUGHES CORPORATION**
**Motion No.  003 004 005 006 006**                                    Page 4 of 13

accident comes within the parameters of the broadly worded indemnification clause between Ocean and Kenvil. Ocean argues that it is clear that the plaintiff's injury arose from the "negligent acts or omissions" of Kenvil and alleges that plaintiff was a Kenvil employee who was permitted by Kenvil to use half of an extension ladder that had been broken down into two pieces, in order to do his work. Furthermore, while the indemnification clause cannot serve to indemnify Ocean for its own negligence, there is no evidence that Ocean was negligent. Ocean did not supervise or control the plaintiff's work and there is no evidence in the record which suggest that Ocean had anything to do with the extension ladder allegedly used by the plaintiff during his accident.

In opposing the motion, Kenvil argues that Ocean has failed to sufficiently demonstrate a causal connection between the plaintiff's injuries and Kenvil's work (*see Worth Constr. Co., Inc. v Admiral Ins. Co.*, 10 NY3d 411, 415 [2008]; *Vazquez v City of New York*, 200 AD3d 482 [1st Dept 2021]; *Baez v R&R Contr. Inc.*, 287 AD2d 351, 351- 352 [1st Dept 2001]). Here, Kenvil insists that it did not own the ladder involved in the alleged incident, did not separate or set up the ladder and did not direct plaintiff to use the ladder. Kenvil also claims that the plaintiff was not actually involved in erecting steel at the time of his accident and was merely using the subject ladder to gain access to the ground floor of the jobsite. Kenvil's only connection to the incident is that Mr. Scanlon was a Kenvil employee. Kenvil believes that what it terms as its employee's mere presence on the job site and/or his performance of routine duties does not trigger the indemnification clause.

The problem for Kenvil is that the evidence clearly shows that the plaintiff is alleging that he was doing far more than just merely being present on a job site and performing routine duties. The plaintiff specifically testified at his deposition that he was bolting steel on the first-floor jobsite and needed the ladder to access that jobsite. Plaintiff had his tools and bolts in his tool kit when he climbed up the ladder and was ready to commence work. These facts are sufficient to trigger the indemnification clause regardless of who owned the ladder that the plaintiff allegedly fell from. It is clear from the record that the plaintiff's injuries did arise out of the work being performed by Kenvil, and therefore the indemnification clause in the contract between Ocean and Kenvil is triggered (*see Cresser v 345 Park Avenue, L.P.*, 193 AD3d 526, 527 [1st Dept 2021]; *Alarcon v UCAN White Plains Housing Development Fund Corp.*, 100 AD3d 431, 432 [1st Dept 2012]; *Masciotta v Morse Diesel International , Inc.*, 303 AD2d 309 [1st Dept 2003]). Although Ocean argues that Kenvil's negligence has been established, it is not necessary for the court to find Kenvil negligent in order to grant Ocean summary judgment on its contractual indemnification claim given that the plaintiff's claims clearly arise from the work contemplated in the contract between Ocean and Kenvil. Accordingly, Ocean's motion for summary judgment on its cross-claim for contractual indemnification against Kenvil is granted.

## Motion Sequence 005

In motion sequence 005, Seaport moves for summary judgment and an order dismissing those causes of action in plaintiff's complaint which allege negligence and a violation of Section 200 of the New York Labor Law and granting summary judgment to

**155345/2020 SCANLON, MICHAEL vs. HOWARD HUGHES CORPORATION** Page 5 of 13
**Motion No. 003 004 005 006 006**

5 of 13

Seaport on their claims for contractual indemnification against Plaza, Ocean Steel and Kenvil. Plaza cross-moves for an order granting it summary judgment and dismissing plaintiff's claims against Plaza for negligence and a violation of Labor Law 200 and granting Plaza summary judgment on its claims for contractual indemnification against Ocean Steel and Kenvil.

Seaport argues that the plaintiff's claims for common law negligence and/or violations of Section 200 of the Labor Law should be dismissed as against Seaport because the plaintiff's alleged accident arose from the means and methods of the plaintiff's work and Seaport did not supervise, direct or control the plaintiff's work. Where, as here, a construction accident arises out of a dangerous condition on the site, as opposed to the means and methods employed to perform the work, liability under Labor Law § 200 or for common law negligence may be imposed on an owner or contractor only when the owner or contractor either exercises direct supervision or control over the injury-producing work or had actual or constructive notice of the unsafe condition (see Higgins v 1790 Broadway Assoc., 261 AD2d 223, 225 [1st Dept 1999]). The evidence in the record establishes that Seaport did not exercise supervision or control over the plaintiff's work and there is nothing in the record that suggests that Seaport owned the subject ladder or was aware that it was unsecured and/or not safe to use. Plaintiff's supervisor was George Marcinkevich, an employee of Kenvil. Kenvil was the installer of the steel fabricated by Ocean. Kenvil supervisors gave the plaintiff his daily assignments, directed his work and provided him with the means and methods to get the work done. There is no evidence that Seaport had any role in instructing Kenvil employees how to perform their work, including which ladders to use. Accordingly, the Seaport defendants are entitled to summary judgment and a dismissal of plaintiff's causes of action alleging common law negligence and/or violations of Labor Law 200 against Seaport.

Seaport also claims that it is entitled to contractual indemnification from codefendant Plaza and third-party defendants Ocean and Kenvil. The injury arose out of the work being performed by Plaza, Ocean and Kenvil and the language of their respective contracts requires them each to indemnify Seaport. Only Kenvil and Ocean oppose Seaport's motion. Kenvil argues, as it did in opposition to Ocean's summary judgment motion, that the moving party has failed to demonstrate a causal connection between the plaintiff's injuries and Kenvil's work. For the reasons set forth above, that argument is unavailing. Ocean maintains that the subject indemnification contract between Seaport and Ocean requires a showing that Ocean was negligent in order to require that Ocean indemnify Seaport. That interpretation is based on a strained reading of the indemnification clause which is in reality very broad. Article 9 of the relevant Subcontract states, in relevant part:

> 9.1 To the extent permitted by law, Subcontractor (Ocean Steel) shall indemnify, defend, save and hold Owner (Seaport Defendants), Plaza, Plaza's Safety Consulting Firm, their respective partners, officers, employees and anyone else acting for or on behalf of any of them (herein collectively called "Indemnitees) harmless from and against all liability, damage, loss, claims, demands and

155345/2020 SCANLON, MICHAEL vs. HOWARD HUGHES CORPORATION
Motion No. 003 004 005 006 006

Page 6 of 13

6 of 13

[* 6]

actions of any nature whatsoever to the extent caused by or claimed to be caused by:

9.1.I The performance of Work by the Subcontractor, or any of its sub-subcontractors, any act or omission of any of the foregoing; ......

9.1.3 The use, misuse, erection, maintenance, operation or failure of any machinery or equipment (including, but not limited to, scaffolds, derricks, ladders, hoists, rigging supports, etc.) regardless of whether such machinery or equipment was furnished, rented or loaned by the Owner or Plaza or their officers, employees, agents, servants or others, to Subcontractor;

There is nothing in the above cited language which requires a showing of negligence on the part of Ocean. By the clear terms of the contract, Ocean is required to indemnify Seaport for any claims caused by or claimed to be caused by the performance of the work by Ocean or any of its subcontractors. There is no dispute that plaintiff claims his injuries were caused by the performance of his work as an employee of Kenvil and that Kenvil was a subcontractor hired by Ocean. Additionally, Ocean is also required to indemnify Seaport for all claims alleged to have been caused by the use of any machinery or equipment, specifically including a ladder at the jobsite. There is no dispute that plaintiff's claims are alleged to have been caused by Plaintiff's use of a ladder at the jobsite. As such, it's clear that Ocean is required to indemnify Seaport. Likewise, Kenvil is contractually required to indemnify Seaport.

Plaza does not oppose Seaport's motion but rather brings its own cross-motion seeking the exact same relief, dismissal of the plaintiff's Labor Law 200 and common law negligence claims and summary judgment on its cross-claims for contractual indemnification against Ocean and Kenvil. While Plaza's cross-motion is untimely, the court will consider it in the interests of justice as it seeks the same or substantially identical relief as the timely summary judgment motion made by Seaport (see *Conklin v Triborough Bridge and Tunnel Authority*, 49 AD3d 320, 321 [1st Dept 2008]; *Filannino v Triborough Bridge & Tunnel Auth*, 34 AD3d 280, 281 [1st Dept 2006]). The issues raised are already before the court and the identical nature of the grounds sought provides the requisite good cause needed to review the merits of the otherwise untimely cross-motion. (see *Alonzo v Safe Harbors of the Hudson Hous. Dev. Fund Co., Inc.*, 104 AD3d 446, 448-49 [1st Dept 2013]; *Homeland Ins. Co. of N.Y. v National Grange Mut. Ins. Co.*, 84 AD3d 737, 738-39 [2d Dept 2011]).

The moving papers detail the broad language of the various indemnification clauses in the contracts between the various entities working at the subject construction site. The indemnification obligations pass through from Seaport to Plaza to Ocean to Kenvil. Ocean assumed Plaza's obligations and liabilities to the Seaport defendants and, in turn, Kenvil assumed Ocean's obligations to the Seaport defendants and Plaza. All of the contractual agreements contain broad indemnification provisions ("arising out of" or "in connection with" the performance of the contracted work) that do not require any showing of fault or negligence. Thus, Plaza would be entitled to indemnification form Ocean and Kenvil (and ultimately Kenvil). However, Plaza cannot be indemnified

155345/2020  SCANLON, MICHAEL vs. HOWARD HUGHES CORPORATION
Motion No.  003 004 005 006 006

Page 7 of 13

7 of 13

for its own negligence and would also not be entitled to a dismissal of the plaintiff's Labor Law 200 and common law negligence claims if there was evidence that Plaza was negligent.

The question on the cross-motion becomes, Is there evidence in the record sufficient to support a finding that Plaza was negligent and that its negligence was a proximate cause of the plaintiff's accident? Plaza says no. Kenvil argues that there is evidence of Plaza's negligence. It appears to be undisputed that the ladder at issue was not owned, supplied by, or set up by the plaintiff's employer, Kenvil. Both the plaintiff and his co-worker, Chris Hald, testified at deposition that they did not know who owned the subject blue ladder, had no knowledge as to who separated the blue extension ladder and had no knowledge as to who set up the blue ladder against the foundation wall. Kenvil's foreman testified that Kenvil only used orange ladders at the jobsite and his testimony was corroborated by both the plaintiff and Mr. Hald. Kenvil's ladders also had the company name imprinted on them. Finally, it is not disputed that no one from Kenvil ever directed or instructed the plaintiff to use the blue ladder as opposed to the orange extension ladders.

As the construction manager/general contractor for the jobsite, Plaza can be held liable for the dangerous condition of the ladder only if it either created the dangerous or defective condition or having actual or constructive notice of it, it was had the authority to remedy it and failed to do so. (see Tisselin v Memorial Hospital for Cancer and Allied Diseases, 221 AD3d 570, 572 [1st Dept 2023]; Dirschneider v Rolex Realty Co, LLC, 157 AD3d 538, 539 [1st Dept 2018]; Cappabianca v Skanska USA Bldg. Inc., 99 AD3d 139, 143-144 [1st Dept 2012]). Kenvil suggests there is sufficient evidence in the record from which a trier of fact could infer that Plaza had notice of the defective or dangerous blue ladder. The Court agrees.

The subject blue ladder was frequently used by workers to gain access to the jobsite. Mr. Hald, the plaintiff's co-worker, testified that he and others used the blue ladder everyday for approximately two weeks prior to the date of the accident in order to gain access to the jobsite. Plaza had a superintendent on site, Jeremy Bunzel, who was responsible for monitoring the safety of the worksite. He would conduct multiple walk-throughs of the jobsite every day and he testified that part of his walk-throughs included checking to see if the ladders were set up correctly. Mr. Bunzel had the authority to stop any work if he observed an unsafe condition or unsafe work practice. Clearly separating an extension ladder and using it without any securing device such as rubber feet or a tie-off is a dangerous and unsafe practice and/or condition. Since Plaza had the authority to supervise the work and there is at least an issue of fact as to whether they had notice of the unsafe condition of the blue ladder, Plaza's cross-motion for summary judgment motion must be denied.

### Motion sequence 006

In motion sequence 006, the plaintiff moves for partial summary judgment motion for partial summary judgment on his Labor Law §240(1) cause of action against Seaport and Plaza.

155345/2020 SCANLON, MICHAEL vs. HOWARD HUGHES CORPORATION
Motion No. 003 004 005 006 006

Page 8 of 13

**Labor Law § 240(1)**, commonly known as the Scaffold Law, requires that owners, contractors, and their agents "furnish or erect, or cause to be furnished or erected for the performance of such labor,..., ladders, ... and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed" (emphases added).

Labor Law § 240 (1) imposes a nondelegable duty and absolute liability upon owners and contractors for failing to provide safety devices necessary for workers subjected to elevation-related risks in circumstances specified by the statute (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513 [1991]). "[T]he single decisive question is whether plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential" (*Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 603 [2009]). To establish liability on a Labor Law § 240 (1) cause of action, the plaintiff must show: (1) a violation of the statute, and (2) that the violation was a proximate cause of his or her injuries (*Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 287-289 [2003]).

"It is sufficient for purposes of liability under section 240 (1) that adequate safety devices to prevent the ladder from slipping or to prevent the plaintiff from falling were absent" (*McCarthy v Turner Constr., Inc.*, 52 AD3d 333,334 [1st Dept 2008] [internal quotation marks and citation omitted]). The plaintiff is not required to prove that the ladder was defective (*see Fanning v Rockefeller Univ.*, 106 AD3d 484,485 [1st Dept 2013]; *Orellano v 29 E. 37th St. Realty Corp.*, 292 AD2d 289, 290 [1st Dept 2002]). However, in this case it is undisputed that the ladder the plaintiff was using when he claims to have been injured was defective both because it was the top half of an extension ladder that had been separated and because it had no feet and was not secured or tied-off. This is more than sufficient to establish a prima facie showing of entitlement to summary judgment as to liability under Labor Law §240(1).

In *Hill v City of New York*, 140 AD3d 568 [1st Dept 2016], the plaintiff was injured while working on a ladder. The plaintiff testified that the ladder wobbled, and he lost his balance and fell off the ladder. The Court stated that when a ladder is used as a safety device, it must remain steady and erect while being used and that the failure of the ladder to remain steady and erect constitutes a violation of Section 240(1) (*Id.* at 568-69). Notably, in granting the plaintiff's motion for summary judgment, the Appellate Division explained that whether the plaintiff fell because the ladder wobbled or because he dropped the wrench that he was holding was completely irrelevant because as a matter of law Section 240(1) was violated when the ladder failed to prevent the plaintiff from falling (*Id.* at 570; *see also Hernandez v Bethel United Methodist Church*, 49 AD3d 251, 252 [1st Dept 2008)]["'It is well settled that [the] failure to properly secure a ladder, to ensure that it remain steady and erect while being used, constitutes a violation of Labor Law § 240(1)'"]; *Montalvo v J. Petrocelli Constr.*, 8 AD3d 173 [1st Dept 2004] ["'Where a ladder is offered as a work-site safety device, it must be sufficient to provide proper protection. It is well settled that [the] failure to properly secure a ladder, to ensure that it remain steady and erect while being used, constitutes a violation of Labor Law § 240(1)'"]). Numerous other cases from the First Department and other courts corroborate that it is axiomatic that a plaintiff meets his burden of establishing a prima

155345/2020 SCANLON, MICHAEL vs. HOWARD HUGHES CORPORATION
Motion No. 003 004 005 006 006

Page 9 of 13

9 of 13

[* 9]

facie showing that he is entitled to summary judgment on a Section 240(1) claim when it is clear that the plaintiff was injured due to the movement of the ladder (*see, e.g., Ocana v. Quasar Realty Partners L.P.*, 137 AD3d 566, 567 [1st Dept 2016] [holding that the plaintiff was entitled to summary judgment when he was caused to fall off of the ladder because it wobbled]; *Fanning*, 106 AD3d at 485 [holding that the plaintiff was entitled to summary judgment because the evidence demonstrated that the plaintiff was caused to fall when the unsecured A-frame ladder that he was standing on "suddenly moved"]; *Estrella v GIT Indus., Inc.*, 105 AD3d 555, 555 [1st Dept 2013] [affirming the lower court's granting of partial summary judgment to a plaintiff on his Section 240(1) claim when the plaintiff was caused to fall because "the unsecured ladder on which he was working suddenly moved"]; *Marquez v Trustees of Columbia Univ.*, 95 AD3d 588 [1st Dept 2012] [holding that the plaintiff was entitled to summary judgment when he was caused to fall off of the ladder because it tipped]). The burden now shifts to the defendants to rebut the plaintiff's prima facie showing.

In opposition to the motion, the defendants make several arguments. First, they maintain that there is insufficient proof to establish that the plaintiff was required to use the blue extension ladder in order to perform his assigned task. The defendants also argue that the plaintiff's actions were the sole proximate cause of his accident. These two arguments are intertwined and/or related. Finally, the defendants maintain that summary judgment to the plaintiff is inappropriate since his accident was unwitnessed and there are issues of fact as to how the accident occurred.

As set forth above, the undisputed evidence demonstrates that a blue separated extension ladder was present in the workplace and used by several workers prior to the plaintiff's accident in order to access the jobsite. Labor Law §240(1) imposes a non-delegable duty on defendants to provide safe and secure ladders. However, the defendants argue that the plaintiff did not need to use the blue extension ladder in order to access the jobsite and should have found a safer ladder to climb (or utilized a lift) at the time of his accident. Defendants are asserting a defense that the plaintiff's actions were the sole proximate cause of his accident.

As noted in the Affirmation in Opposition, there is evidence that Kenvil furnished orange extension ladders equipped with rubber feet and otherwise fully secured that the plaintiff could have used instead of the blue separated extension ladder. The plaintiff admitted that he had used the orange ladder previously, without incident, including at least two times in the hours preceding this alleged accident . (Ex. F, 114:9-20, 115:12-116:7, 189:11-15, 190:6-191:12; Ex. I, 98: 14, 190:14-15; Ex. J, 36:13-15). The orange extension ladder was approximately 300 feet from where the alleged accident occurred. (Ex. F, 116:4-7). The plaintiff admitted that there was nothing that prevented him from using the orange extension ladder to access the first floor (Ex. F, 116:8 10). As well, the plaintiff admitted that Kenvil had furnished boom lifts, which were available for his use, and he could have used a boom lift to reach the first floor (Ex. F, 198:11-17). The plaintiff, however, testified that he did not look for a boom lift, he decided to climb the broken blue extension ladder half because he happened to see it – "I wasn't looking for a man lift. I just saw the ladder there" (Ex. F, 198:18-21). Significantly, the plaintiff admitted that he decided to ascend the broken extension ladder simply because it was

155345/2020  SCANLON, MICHAEL vs. HOWARD HUGHES CORPORATION
Motion No. 003 004 005 006 006

Page 10 of 13

[* 10]

"more convenient" than walking the 300 feet to the fully-secured extension ladder (Ex. F, 116:2-3).

Since alternative means of accessing the elevated jobsite were readily available, a trier of fact could logically conclude that the plaintiff could have prevented his accident by utilizing them (see *Robinson v East Medical Center, LP*, 6 NY3d 550, 555 [2006]; *Montgomery v Federal Express Corp.*, 4 NY3d 805 [2005]). It is well settled that a Labor Law § 240(1) claim cannot be determined as a matter of law if there are genuine issues of material fact whether the accident was caused by the plaintiff's failure to use available safety devices that were adequate for the work being performed. Here there is an issue of fact as to whether the plaintiff could have utilized the orange ladder or the boom lift to access his worksite and whether his decision to use the unsecured and separated blue extension ladder instead was the sole proximate cause of his injuries (see *Egan v Monadnock Const., Inc.*, 43 AD3d 692 [1st Dept 2007]; *Mercado v New York University*, 29 A.D.3d 496, 496-97 [1st Dept. 2006]). Thus, even though the plaintiff's version of the accident is otherwise uncontroverted, there is an issue of fact as to whether the plaintiff's actions were the sole proximate cause of his injuries. Accordingly, in motion sequence 006, the plaintiff's motion for partial summary judgment on Labor Law §240(1) is denied.

For the reasons set forth hereinabove, it is hereby

ORDERED and ADJUDGED that the motion (Mot. Seq. 003) of Third-Party Defendant/Second Third-Party Defendant KENVIL UNITED CORP. for summary judgment dismissing all third-party claims and cross-claims sounding in common law indemnity and contribution against them is GRANTED and all such claims are dismissed; and it is further

ORDERED and ADJUDGED that the motion (Mot. Seq. 004) of Third-Party Defendant/Second Third-Party Defendant OCEAN STEEL & CONSTRUCTION, LTD. For summary judgment on its claim for common law indemnification against Third-Party Defendant/Second Third-Party Defendant KENVIL UNITED CORP. is DENIED; and it is further

ORDERED and ADJUDGED and DECLARED that the motion (Mot. Seq. 004) of Third-Party Defendant/Second Third-Party Defendant OCEAN STEEL & CONSTRUCTION, LTD. For summary judgment on its claim for contractual indemnification against Third-Party Defendant/Second Third-Party Defendant KENVIL UNITED CORP. is GRANTED, and Third-Party Defendant/Second Third-Party Defendant KENVIL UNITED CORP shall indemnify Third-Party Defendant/Second Third-Party Defendant OCEAN STEEL & CONSTRUCTION, LTD.; and it is further

ORDERED and ADJUDGED and DECLARED that the motion (Mot. Seq. 005) of Defendants/Third-Party Plaintiffs SOUTH STREET SEAPORT LIMITED PARTNERSHIP and SEAPORT MANAGEMENT DEVELOPMENT COMPANY, LLC for summary judgment dismissing Plaintiff's causes of action for negligence and violation of Labor Law § 200 as against them is GRANTED; and it is further

ORDERED and ADJUDGED and DECLARED that the motion (Mot. Seq. 005) of Defendants/Third-Party Plaintiffs SOUTH STREET SEAPORT LIMITED PARTNERSHIP and SEAPORT MANAGEMENT DEVELOPMENT COMPANY, LLC for summary judgment on its claim for contractual indemnification against Defendant PLAZA CONSTRUCTION, LLC, and Third-Party Defendants, OCEAN STEEL & CONSTRUCTION LTD and KENVIL UNITED CORP. is GRANTED, and PLAZA CONSTRUCTION, LLC, OCEAN STEEL & CONSTRUCTION LTD and KENVIL UNITED CORP. shall indemnify Defendants/Third-Party Plaintiffs SOUTH STREET SEAPORT LIMITED PARTNERSHIP and SEAPORT MANAGEMENT DEVELOPMENT COMPANY, LLC; and it is further

ORDERED that the cross-motion (Mot. Seq. 005) of Defendant/Third-Party Defendant/Second Third-Party Plaintiff Plaza Construction LLC for summary judgment is DENIED; and it is further

ORDERED and ADJUDGED and DECLARED that the motion (Mot. Seq. 006) of Plaintiff MICHAEL SCANLON for partial summary judgment on his Labor Law § 240(1) cause of action against Defendants SOUTH STREET SEAPORT LIMITED PARTNERSHIP, SEAPORT MANAGEMENT DEVELOPMENT COMPANY, LLC, and PLAZA CONSTRUCTION LLC is DENIED.

This constitutes the decision and order of the court.

**Mot. Seq. 003**

| 10/1/2024 | | |
|---|---|---|
| DATE | | NICHOLAS W. MOYNE, J.S.C. |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | X | GRANTED | DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

**Mot. Seq. 004**

| 10/1/2024 | | |
|---|---|---|
| DATE | | NICHOLAS W. MOYNE, J.S.C. |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

**Mot. Seq. 005**

| 10/1/2024 | | |
|---|---|---|
| DATE | | NICHOLAS W. MOYNE, J.S.C. |

155345/2020  SCANLON, MICHAEL vs. HOWARD HUGHES CORPORATION          Page 12 of 13
Motion No.  003 004 005 006 006

[* 12]

CHECK ONE:  [ ] CASE DISPOSED  [X] NON-FINAL DISPOSITION

[X] GRANTED  [ ] DENIED  [ ] GRANTED IN PART  [ ] OTHER

APPLICATION:  [ ] SETTLE ORDER  [ ] SUBMIT ORDER

CHECK IF APPROPRIATE:  [ ] INCLUDES TRANSFER/REASSIGN  [ ] FIDUCIARY APPOINTMENT  [ ] REFERENCE

(signatures continue next page)

**Mot. Seq. 005 Cross-Motion**

| 10/1/2024 | | |
|---|---|---|
| DATE | | NICHOLAS W. MOYNE, J.S.C. |

CHECK ONE:  [ ] CASE DISPOSED  [X] NON-FINAL DISPOSITION

[ ] GRANTED  [X] DENIED  [ ] GRANTED IN PART  [ ] OTHER

APPLICATION:  [ ] SETTLE ORDER  [ ] SUBMIT ORDER

CHECK IF APPROPRIATE:  [ ] INCLUDES TRANSFER/REASSIGN  [ ] FIDUCIARY APPOINTMENT  [ ] REFERENCE

**Mot. Seq. 006**

| 10/1/2024 | | |
|---|---|---|
| DATE | | NICHOLAS W. MOYNE, J.S.C. |

CHECK ONE:  [ ] CASE DISPOSED  [X] NON-FINAL DISPOSITION

[ ] GRANTED  [X] DENIED  [ ] GRANTED IN PART  [ ] OTHER

APPLICATION:  [ ] SETTLE ORDER  [ ] SUBMIT ORDER

CHECK IF APPROPRIATE:  [ ] INCLUDES TRANSFER/REASSIGN  [ ] FIDUCIARY APPOINTMENT  [ ] REFERENCE

155345/2020  SCANLON, MICHAEL vs. HOWARD HUGHES CORPORATION
Motion No.  003 004 005 006 006

[* 13]