| |
|---|
| **Stender v 32 Slipstream, LLC** |
| 2024 NY Slip Op 33970(U) |
| November 10, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 153353/2018 |
| Judge: Verna L. Saunders |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| PRESENT:    **HON. VERNA L. SAUNDERS, JSC** | **PART**          **36** |
| *Justice* | |

---------------------------------------------------------------------------------X

GEORGE STENDER,

                        Plaintiff,

            - v -

32 SLIPSTREAM, LLC, RXR CONSTRUCTION SERVICES
LLC, RXR 32 OLD SLIP OWNER, LLC, TRADITION
AMERICA HOLDINGS, INC., TRADITION FINANCIAL
SERVICES, INC., and JOHN GALLIN & SON, INC.,
                        Defendants.

| **INDEX NO.** | 153353/2018 |
|---|---|
| **MOTION SEQ. NO.** | 004; 005 |

**DECISION + ORDER ON MOTION**

---------------------------------------------------------------------------------X

32 SLIPSTREAM, LLC.,

                      Third-Party Plaintiff,

               -against-

RXR 32 OLD SLIP OWNER LLC.,

                      Third-Party Defendant.

---------------------------------------------------------------------------------X

JOHN GALLIN & SON, INC.,

                      Second Third-Party Plaintiff,

               -against-

GODSELL CONSTRUCTION CORP.,

                      Second Third-Party Defendant.

---------------------------------------------------------------------------------X

TRADITION AMERICA HOLDINGS, INC., and TRADITION
FINANCIAL SERVICES, INC.,

                      Third Third-Party Plaintiff,

               -against-

GODSELL CONSTRUCTION CORP.,

                      Third Third-Party Defendant.

---------------------------------------------------------------------------------X

GODSELL CONSTRUCTION CORP.

                      Fourth Third-Party Plaintiff,

               -against-

NEAD ELECTRIC, INC.

                      Fourth Third-Party Defendant.

[* 1]

```
---------------------------------------------------------------------X
```

JOHN GALLIN & SON, INC.,

Fifth Third-Party Plaintiff,

-against-

NEAD ELECTRIC, INC.,

Fifth Third-Party Defendant.

```
---------------------------------------------------------------------X
```

The following e-filed documents, listed by NYSCEF document number (Motion 004) 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 198, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 236, 237, 238, 239, 241, 242, 245, 246, 247, 248, 249, 250, 251, 260, 262, 263, 264, 265, 268, 269, 270, 271, 272, 273, 274, 275, 276, 277, 278, 279, 280, 281, 284, 296

were read on this motion to/for      _____**SUMMARY JUDGMENT**_____ .

The following e-filed documents, listed by NYSCEF document number (Motion 005) 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 199, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 240, 243, 244, 252, 253, 254, 255, 256, 257, 258, 259, 261, 266, 267, 282, 283, 285, 286, 287, 288, 289, 290, 291, 292, 293, 294, 295, 297

were read on this motion to/for      _____**SUMMARY JUDGMENT**_____ .

     This is an action to recover damages for personal injuries allegedly sustained by plaintiff, a carpenter, on March 7, 2018, when, while working at a construction site located at 32 Old Slip, New York, New York ("premises"), he tripped on debris, causing him to lose his balance and bump into a metal stud that he was in the process of installing, causing a clamp to come loose, which caused a metal brace on the stud to fall and strike his wrist. On the day of the accident, the premises was owned by 32 Slipstream, LLC and RXR 32 Old Slip Owner, LLC (collectively, "32 Slip").[1] 32 Slip leased a portion of the premises to Tradition American Holdings, Inc. ("Tradition"). Tradition hired John Gallin & Son, Inc. ("Gallin") as the general contractor for a project at the premises. Gallin, in turn, subcontracted electrical work to Nead Electric, Inc. ("Nead"), and carpentry work to Godsell Construction Corp ("Godsell"), plaintiff's employer at the time of the accident.

     In Mot. Seq. 004, Godsell moves, pursuant to CPLR 3212, for summary judgment dismissing the second third-party complaint and the third third-party complaint as against it or, if necessary, for summary judgment in its favor against Nead (NYSCEF Doc. No. 150, *notice of motion*). In Mot. Seq. 005, plaintiff moves, pursuant to CPLR 3212, for summary judgment in his favor on his Labor Law §§ 240(1), 241(6) and 200 claims as against all defendants (NYSCEF Doc. No. 174, *notice of motion*). In relation to Mot. Seq. Nos. 004 and 005, Gallin cross-moves, pursuant to CPLR 3212, for summary judgment dismissing the complaint as against it and for summary judgment in its favor on its contractual indemnification cross-claim against Godsell (NYSCEF Doc. No. 218, *notice of cross motion*).

---

[1] The two 32 Slip defendants are adverse to one another in the third-party action and the record does not indicate the resolution or discontinuance of the third-party action. That said, both parties are presently represented by the same counsel, and so this court will treat them as aligned in interest.

**153353/2018  STENDER, GEORGE vs. 32 SLIPSTREAM, LLC**
**Motion No.  004 005**

Mot. Seq. Nos. 004 and 005 are hereby consolidated for disposition.

In support of Mot. Seq. 005, plaintiff submits a copy of his own deposition testimony, wherein he testifies that on the day of the injury, Joseph Ralbovski, his foreman at Godsell, directed him and another Godsell employee, Taras Dyachenko, to do framing and sheetrocking work on the 27th floor of the premises. Plaintiff testifies that framing a wall involves putting a stud up, followed by placing a "brace from the stud going back to the wall. A clamp goes on that. When you put the clamp on that then you have to pin it and take the clamp off". According to plaintiff, the electricians from Nead were "on man lifts" "running conduit pipe above" a relatively short distance behind where plaintiff was working, and in so doing, littered the floor with conduit, wires, and connectors. Plaintiff notes that when he informed his foreman about the debris, he was directed to continue with his responsibilities. He further posits that in an attempt to clean the debris generated by the electricians from his work area, he used his speed square to clear the spot in front of the stud he was installing. Plaintiff asserts that his foot made contact with some unseen debris as he was installing a stud and was injured as a result (NYSCEF Doc. No. 227, *Stender deposition*). Plaintiff submits a copy of the deposition testimony of his co-worker, Taras Dyachenko, who witnessed the injury (NYSCEF Doc. No. 165, *Dyachenko deposition*).

Plaintiff also submits the deposition testimony of Joseph Ralbovski, Godsell's foreman, who avers that that on the day of the accident, he assigned Godsell workers to their location and that Gallin's laborers were responsible for cleaning up and removing debris from the work areas. He confirmed that electricians were working on the same floor as plaintiff on the day of the accident and that Gallin's superintendent was responsible for coordination at the premises (NYSCEF Doc. No. 290, *Ralbovski depostion*).

Plaintiff also furnishes copies of the following depositions: Keith Crosby, Gallin's project manager at the premises, who avers in his deposition testimony that his responsibility included meeting with the project superintendent, walking the site, attending meetings, and checking quality control and progress benchmarks. He testified that he would only do the general oversight, housekeeping, and safety oversight but did not direct or control how any of the subcontractors performed their work (NYSCEF Doc. No. 278, *Crosby deposition*). Miro Safran testified that he was Tradition's coordinator of facilities, business continuity plans, and disaster relief, and that with respect to the project occurring at the premises, he would walk through the premises to check on the job progress but was not involved in the actual construction process and had no authority to stop work (NYSCEF Doc. No. 167, *Safran EBT*). James Stapleton (hereinafter, "Stapleton") testified that on the day of the accident, he was Nead's general foreman at the premises. Nead would typically put the debris in a pile for the Gallin laborers to clean up at the end of the day. Stapleton testified that allowing workers to work directly above other trades was not permissible and that had he seen Nead workers doing so, he would have stopped the work. He did not recall receiving complaints about Nead working in this manner. Stapleton was unaware of any of his workers dropping castoff pieces from their raised scissor lifts. Stapleton was shown a daily report for the day of the accident and confirmed that it showed that Nead was doing ceiling work that day. He testified that "[m]ost likely," that work would have entailed using conduit.

**153353/2018 STENDER, GEORGE vs. 32 SLIPSTREAM, LLC**
**Motion No. 004 005**

Page 3 of 14

[* 3]

"[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. Failure to make such prima facie showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986] [internal citations omitted]). "Once this showing has been made, the burden shifts to the nonmoving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact that require a trial for resolution" (Giuffrida v Citibank Corp., 100 NY2d 72, 81 [2003]). "[I]t is insufficient to merely set forth averments of factual or legal conclusions" (Genger v Genger, 123 AD3d 445, 447 [1st Dept 2014], quoting Schiraldi v U.S. Min. Prods., 194 AD2d 482, 483 [1st Dept 1993]). If there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied (Rotuba Extruders v Ceppos, 46 NY2d 223, 231 [1978]).

Plaintiff moves for summary judgment in his favor on the Labor Law § 240(1) claim as against all defendants. Gallin cross-moves for summary judgment dismissing the same claim.

Labor Law § 240(1), known as the Scaffold Law, provides as relevant: "All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

Labor Law § 240(1) "imposes a nondelegable duty on owners and contractors to provide devices which shall be so constructed, placed and operated as to give proper protection to those individuals performing the work" (Quiroz v Memorial Hosp. for Cancer & Allied Diseases, 202 AD3d 601, 604 [1st Dept 2022] [internal quotation marks and citations omitted]). It "was designed to prevent those types of accidents in which the scaffold . . . or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person" (John v Baharestani, 281 AD2d 114, 118 [1st Dept 2001], quoting Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501 [1993]).

The absolute liability found within section 240 "is contingent upon the existence of a hazard contemplated in section 240(1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein" (O'Brien v Port Auth. of N.Y. & N.J., 29 NY3d 27, 33 [2017] [internal quotation marks and citation omitted]). In addition, Labor Law § 240(1) "must be liberally construed to accomplish the purpose for which it was framed" (Valensisi v Greens at Half Hollow, LLC, 33 AD3d 693, 695 [2d Dept 2006] [internal citations omitted]).

That said, not every worker who is injured at a construction site is afforded the protections of Labor Law § 240(1), and "a distinction must be made between those accidents caused by the failure to provide a safety device . . . and those caused by general hazards specific to a workplace" (Narducci v Manhasset Bay Assoc., 96 NY2d 259, 267-268 [2001]); Buckley v Columbia Grammar & Preparatory, 44 AD3d 263, 267 [1st Dept 2007]). Instead, liability "is contingent upon the existence of a hazard contemplated in section 240(1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein" (Narducci, 96 NY2d at

267). Therefore, to prevail on a Labor Law § 240(1) claim, a plaintiff must establish that the statute was violated, and that this violation was a proximate cause of the plaintiff's injuries (*Barreto v Metropolitan Transp. Auth.*, 25 NY3d 426, 433 [2015]).

Here, plaintiff's accident occurred when he tripped on the debris on the ground, causing him to lose his balance and grab ahold of a metal stud, knocking loose a clamp holding a two-pound metal brace, causing that brace to fall from chest level to strike plaintiff's wrist. The parties dispute whether this accident was caused by the inadequacy of a safety device designed to protect from height-related risks. As relevant here, "[n]o Labor Law § 240(1) liability exists where an injury results from a separate hazard wholly unrelated to the risk which brought about the need for the safety device in the first place" (*Cohen v Memorial Sloan-Kettering Cancer Ctr.*, 11 NY3d 823, 825 [2008]). It is undisputed that the injury resulted from plaintiff's tripping over the debris and did not arise from a risk that would require the height-related protective devices governed by section 240(1). Rather, it arose from a separate hazard – debris on the ground creating a tripping hazard. Accordingly, the accident does not fall within the scope of Labor Law § 240(1) (see *Cohen*, 11 NY3d at 825).

Plaintiff argues that the falling brace is a risk contemplated by section 240(1), because the brace itself was a falling object. This argument is unpersuasive. For a falling object to fall within the scope of section 240(1), "the plaintiff must demonstrate that at the time the object fell, it either was being hoisted or secured or required securing for the purposes of the undertaking" (*Fabrizi v 1095 Ave. of Ams., L.L.C.*, 22 NY3d 658, 662-63 [2014] [internal quotation marks and citations omitted]). Plaintiff has not provided any evidence or testimony establishing that the two-pound brace required securing of the type contemplated by section 240(1) for the purposes of its installation at chest or eye level (see *Bonaerge v Leighton House Condominium*, 134 AD3d 648, 649 [1st Dept 2015] [plaintiff established a violation through expert testimony that the object in question required securing and that "statutorily enumerated safety devices could have prevented the accident"]).

Moreover, the three-foot fall of a two-to-three-pound object would constitute a *de minimis* distance. Generally, a large, heavy object, that can generate a significant amount of force, will fall within the scope of section 240(1), even if it only falls a short distance (see *Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.*, 18 NY3d 1, 10 [2011] [a small height differential "cannot be described as *de minimis*" where "the amount of force [the object] [was] able [to] generat[e]" is significant), but a short distance fall of a lightweight object does not generate the type or amount of force contemplated by the statute. Plaintiff relies on several cases to establish that the three-foot fall of the two-pound brace was not *de minimis*. They are unavailing, as each case contemplates much larger and heavier objects that fell short distances. For example, plaintiff relies on *Gutierrez v Harco Consultants Corp.* (157 AD3d 537 [1st Dept 2018]) to support his position. However, as explained by the trial court in the underlying decision (see *Gutierrez v Harco Consultants Corp.*, 2017 NY Slip Op. 30264[U], **3 [Sup Ct, NY County 2017]), the object that fell a short distance onto the plaintiff was 18 feet long and weighed approximately 170 pounds, generating the type of force that required proper securing to prevent its fall.

Accordingly, even were plaintiff's accident to fall within the general ambit of protection contemplated by section 240(1), the statute would still not apply because the force generated by the two-pound brace falling a short distance was insufficient to require the type of safety devices contemplated by section 240(1). Given the foregoing, plaintiff is not entitled to summary judgment in his favor on the Labor Law § 240(1) claim and Gallin is entitled to summary judgment dismissing the claim as against it. Further, as the accident does not contemplate section 240(1), by operation of law, all defendants are entitled to dismissal of the same.

Plaintiff moves for summary judgment in his favor on that part of his Labor Law § 241(6) claim predicated on a violation of Industrial Code 12 NYCRR 23-1.7(e)(2). Gallin cross-moves for summary judgment dismissing all Labor Law § 241(6) claims as against it.

Labor Law § 241(6) provides, in pertinent part, as follows:

"All contractors and owners and their agents, . . . when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:
* * *
(6)    All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, [and] equipped . . . as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places."

Labor Law § 241(6) imposes a nondelegable duty of reasonable care upon owners and contractors "'to provide reasonable and adequate protection and safety' to persons employed in, or lawfully frequenting, all areas in which construction, excavation or demolition work is being performed" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 348 [1998]; see also *Ross v Curtis-Palmer Hydro-Electric Co.*, 81 NY2d at 501–502). To sustain a Labor Law § 241(6) claim, it must be established that the defendant violated a specific, "concrete specification" of the Industrial Code, rather than a provision that considers only general worker safety requirements (*Messina v City of New York*, 300 AD2d 121, 122 [1st Dept 2002]). Such violation must be a proximate cause of the plaintiff's injuries (see *Yaucan v Hawthorne Vil., LLC*, 155 AD3d 924, 926 [2d Dept 2017] ["a plaintiff must demonstrate that his or her injuries were proximately caused by a violation of an Industrial Code regulation that is applicable to the circumstances of the accident"]; see also *Sutherland v Tutor Perini Bldg. Corp.*, 207 AD3d 159, 161 [1st Dept 2022]). "Whether a regulation applies to a particular condition or circumstance is a question of law for the court" (*Harrison v State of New York*, 88 AD3d 951, 953 [2d Dept 2011]).

As an initial matter, plaintiff lists multiple violations of the Industrial Code in the bill of particulars. Except for section 23-1.7(e)(2), plaintiff did not seek relief in his favor or oppose their dismissal. Therefore, these uncontested provisions are deemed abandoned (see *Kempisty v 246 Spring St., LLC*, 92 AD3d 474, 475 [1st Dept 2012]). The court will now address the remaining claim. Notably, Gallin does not seek dismissal of section 23-1.7(e)(2) in its' own motion. Rather, it carves it out and explicitly indicates that it only opposes plaintiff's motion on this point (NYSCEF Doc. No. 235 at 12).

Industrial Code 12 NYCRR 23-1.7(e)(2) is sufficiently specific to support a Labor Law §
241(6) claim (see *Mendoza v Highpoint Assoc., IX, LLC*, 83 AD3d 1, 12 [1st Dept 2011]). It
provides, in pertinent part, the following:

"(e) Tripping and other hazards
* * *
"(2) Working areas. The parts of floors, platforms and similar areas where persons work
or pass shall be kept free from accumulations of dirt and debris and from scattered tools and
materials and from sharp projections insofar as may be consistent with the work being
performed."

Here, plaintiff was injured when he tripped on debris and/or scattered materials in his
work area. Therefore, the accident falls within the scope of section 23-1.7(e)(2). Further,
plaintiff argues, without opposition from any party, that the debris that he tripped over was not
integral to the work being performed at the time of the accident (see e.g., *Krzyzanowski v City of
New York*, 179 AD3d 479, 481 [1st Dept 2020] [the integral-to-the-work defense "applies to
things and conditions that are an integral part of the construction, not just to the specific task a
plaintiff may be performing at the time of the accident"]). Accordingly, plaintiff has established
his *prima facie* entitlement to summary judgment in his favor on this claim.

In response, Gallin only argues that questions of fact exist as to whether another trade
was negligent with respect to the failure to follow section 1.7(e)(2) (NYSCEF Doc. No. 297,
*Gallin reply*). Defendants also argue that there are questions of fact as to plaintiff's comparative
negligence that should preclude a finding in plaintiff's favor.

First, Gallin's argument that questions of fact exist as to other co-defendants' negligence
speak to a delegation of duties that are irrelevant to the non-delegable duties set forth in section
241(6) (see *Bazdaric v Almah Partners LLC*, 41 NY3d 310, 317 [2024] ["Labor Law § 241(6) is
a hybrid statute, as the first sentence reiterates the general common-law standard of care, while
the second sentence imposes a nondelegable duty with respect to compliance with rules of the
Commissioner which contain specific, positive command[s] . . . Thus, an owner or general
contractor is vicariously liable without regard to [their] fault, and even in the absence of control
or supervision of the worksite, where a plaintiff establishes a violation of a specific and
applicable Industrial Code regulation"] [internal quotation marks and citation omitted]).

Next, while comparative negligence serves to mitigate damages under Labor Law §
241(6), it does not preclude a finding of summary judgment in a plaintiff's favor where the
plaintiff has met his *prima facie* burden (establishing that the Industrial Code provision applies,
was violated, and that such violation proximately caused the accident) (*Pichardo v Urban
Renaissance Collaboration Ltd. Partnership*, 51 AD3d 472, 473 [1st Dept 2008] [summary
judgment is appropriate on a Labor Law § 241(6) claim where, "even though a defense of
comparative negligence is raised, insufficient evidentiary proof is offered to raise a triable issue
in response to the plaintiff's prima facie entitlement to judgment as a matter of law"]; *Keegan v
Swissotel N.Y.*, 262 AD2d 111, 114 [1st Dept 1999] ["whether or not plaintiff was himself
negligent may require an apportionment of liability but does not absolve defendants of their own
liability under § 241(6)"]).

Next, 32 Slip and Tradition argue that plaintiff's recitation of the accident is unreliable and, therefore, gives rise to a question of fact. Specifically, defendants argue that plaintiff testified that the electricians were working above him in a man lift or alternately, working above him in a basket. This argument is unavailing. As an initial matter, plaintiff clearly and consistently testified that the electricians were working in man lifts ["They were on man lifts. The scissor lifts"], ["Yeah, in man lifts"]). The term "basket" in plaintiff's deposition is first used in a question posed by defense counsel, and that term was repeated by plaintiff in his response to that question, notwithstanding his clear testimony on the prior page describing the electricians working from "man lifts." In any event, whether the electricians were dropping debris from man lifts or baskets is immaterial, as under either version of the accident, debris was present in his work area and caused him to trip.

Similarly, the argument that questions of fact exist as to whether the electricians were directly above plaintiff, or a few feet away (plaintiff testified that the electricians were "[a]bove [him] and a couple of feet behind [him]" [plaintiff's tr at 82]), is immaterial considering plaintiff's uncontroverted testimony that debris had accumulated in his immediate work area and caused him to trip.

Next, defendants argue that they did not have sufficient notice of the debris to warrant a finding of liability under this provision. However, Labor Law § 241(6) does not require notice (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 352 [1998]).

Finally, to the extent that the parties argue that plaintiff was the sole proximate cause of the accident because he failed to notice and remove the debris before stepping on it, such argument is unavailing. Plaintiff has established the existence of a section 241(6) violation – the accumulation of debris in his work area – that proximately caused his accident and, therefore, he cannot be the sole proximate cause of his accident (*Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 290 [2003]; *Cazho v Urban Bldrs. Group, Inc.*, 205 AD3d 411, 412 [1st Dept 2022]; *Kielar v Metropolitan Museum of Art*, 55 AD3d 456, 458 [1st Dept 2008]). In light of the foregoing, plaintiff is entitled to summary judgment in his favor on his Labor Law § 241(6) claim predicated upon a violation of Industrial Code 12 NYCRR 23-1.7(e)(2).

Plaintiff moves for summary judgment in his favor on his common-law negligence and Labor Law § 200 claims against all defendants. Gallin cross-moves for summary judgment dismissing the same as against it. Labor Law § 200 "is a codification of the common-law duty imposed upon an owner or general contractor to provide construction site workers with a safe place to work" (*Singh v Black Diamonds LLC*, 24 AD3d 138, 139 [1st Dept 2005], citing *Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876, 877 [1993]).

Labor Law § 200(1) states, in pertinent part, as follows: "All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons." Further, "[l]iability pursuant to Labor Law § 200 may be based either upon the manner in which the work is performed or actual or constructive notice of a dangerous

condition inherent in the premises" (*Markey v C.F.M.M. Owners Corp.*, 51 AD3d 734, 736 [2d Dept 2008]; see also *Griffin v New York City Tr. Auth.*, 16 AD3d 202, 202 [1st Dept 2005]).

"Where a plaintiff's claims implicate the means and methods of the work, an owner or a contractor will not be held liable under Labor Law § 200 unless it had the authority to supervise or control the performance of the work" (*LaRosa v Internap Network Servs. Corp.*, 83 AD3d 905, 909 [2d Dept 2011]; *Andino v Wizards Studios N. Inc.*, 223 AD3d 508, 509 [1st Dept 2024]). Specifically, "liability can only be imposed against a party who exercises *actual* supervision of the injury-producing work" (*Naughton v City of New York*, 94 AD3d 1, 11 [1st Dept 2012]). However, where an injury stems from a dangerous condition inherent in the premises, an owner or contractor may be liable in common-law negligence and under Labor Law § 200 when the owner or contractor "'created the dangerous condition causing an injury or when the owner failed to remedy a dangerous or defective condition of which he or she had actual or constructive notice'" (*Mendoza v Highpoint Assoc., IX, LLC*, 83 AD3d 1, 9 [1st Dept 2011], quoting *Chowdhury v Rodriguez*, 57 AD3d 121, 128 [2d Dept 2008]).

As an initial matter, in his reply papers, plaintiff does not dispute that the Labor Law § 200 claim does not apply to 32 Slip and Tradition. Accordingly, plaintiff is not entitled to summary judgment in his favor on these claims as against 32 Slip and Tradition. Here, plaintiff's accident occurred when he tripped over construction debris in his work area, causing him to stumble and become injured. Accordingly, plaintiff's accident was caused by the means and methods of the work – specifically the installation of the conduit in the area which created the debris. It is undisputed that Gallin, as the general contractor, did not provide actual supervision or control over Nead's workers at the premises, but rather, Nead's foreman directed and controlled the actual means and methods of Nead's workers.

Plaintiff argues that Gallin negligently coordinated the trades. Specifically, he contends that Gallin's failure to make certain that Nead's electricians were not working in close proximity to Godsell's carpenters establishes proof of negligence under the common-law and Labor Law § 200. However, "the fact that [the general contractor] coordinated [the subcontractors'] work is insufficient to give rise to liability, as the coordinating and scheduling of trades at work sites do not rise to the level of supervision and control necessary to impose liability under a negligence theory" (*Balcazar v Commet 380, Inc.*, 199 AD3d 403, 404-405 [1st Dept 2021]). Similarly, Gallin's general authority to oversee the construction project's safety is insufficient to establish liability under section 200 (see *Bisram v Long Is. Jewish Hosp.*, 116 AD3d 475, 476 [1st Dept 2014]). Here, the condition – uncleared debris generated during the construction – was created by the manner in which the work was performed. Accordingly, the accident arose from the means and methods of the work. Given the foregoing, Gallin is entitled to summary judgment dismissing the common-law negligence and Labor Law § 200 claims against it.

Godsell moves for summary judgment dismissing Gallin's contractual and common-law indemnification claim as against it, as well as, the contribution claims against it. Gallin cross-moves for summary judgment in its favor on its contractual indemnification claim against Godsell. Importantly, Godsell is plaintiff's employer, and plaintiff received workers' compensation benefits. Therefore, Worker Compensation Law § 11 applies to this case.

Workers' Compensation Law § 11 sets forth, in pertinent part, as follows:

"An employer shall not be liable for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of his or her employment for such employer unless such third person proves through competent medical evidence that such employee has sustained a 'grave injury' which shall mean only one or more of the following: death, permanent and total loss of use or amputation of an arm, leg, hand or foot, . . . or an acquired injury to the brain caused by an external physical force resulting in permanent total disability."

"An employer's liability for an on-the-job injury is generally limited to workers' compensation benefits, but when an employee suffers a 'grave injury' the employer also may be liable to third parties for indemnification or contribution" (*Rubeis v Aqua Club, Inc.*, 3 NY3d 408, 412-413 [2004]). Here, there is no claim that plaintiff suffered a grave injury. Accordingly, Godsell is entitled to summary judgment dismissing Gallin's common-law indemnification and contribution claims as against it.

The court now turns to the contractual indemnification claim. Gallin and Godsell entered into a purchase order agreement dated February 16, 2018 (hereinafter the "Gallin/Godsell Agreement") (NYSCEF Doc. No. 170, *Godsell's notice of motion*). It encompassed Godsell's carpentry work at the premises and included two indemnification provisions (the First Indemnification Provisions and the Second Indemnification Provision), wherein Gallin agreed to provide the following: "9. To indemnify, defend and hold harmless, the building owner, [Gallin], and the project customer from and against any and all loss, damage, injury or death, or claims therefore, including attorney's fees and court costs, on the project or related thereto, arising out of or related to its own intentional acts or negligence or that of its agents or subcontractors, or from its failure to comply with the terms of this purchase order" (*id.* at 28, ¶ 9 (the First Indemnification Provision). The Second Indemnification Provision is identical to the First Indemnification Provision, except it includes the language "To the fullest extent of the law" at the beginning (*id.* at 27). It is undisputed that 32 Slip is the "building owner" and that Tradition is the "project customer."

"A party is entitled to full contractual indemnification provided that the 'intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances'" (*Karwowski v 1407 Broadway Real Estate, LLC*, 160 AD3d 82, 87-88 [1st Dept 2018], quoting *Drzewinski v Atlantic Scaffold & Ladder Co.*, 70 NY2d 774, 777 [1987]; see also *Bradley v NYU Langone Hosps.*, 223 AD3d 509, 511 [1st Dept 2024]). "In contractual indemnification, the one seeking indemnity need only establish that it was free from any negligence and was held liable solely by virtue of the statutory liability" (*Correia v Professional Data Mgt.*, 259 AD2d 60, 65 [1st Dept 1999]; see also *Lexington Ins. Co. v Kiska Dev. Group LLC*, 182 AD3d 462, 464 [1st Dept 2020]). Further, unless the indemnification clause explicitly requires a finding of negligence on behalf of the indemnitor, "[w]hether or not the proposed indemnitor was negligent is a non-issue and irrelevant" (*Correia*, 259 AD2d at 65).

As an initial mater, the parties spend substantial time discussing whether the First Indemnification Provision should be voided for the failure to adequately limit negligence

exposure pursuant to General Obligations Law § 5-322.1. That said, it is undisputed that the Second Indemnification Provision contains such language, and as it is otherwise an exact copy of the first provision, the court will address only the second, properly limited, provision.

Next, the parties dispute whether the indemnification provision requires a finding that Godsell was negligent, or whether the provision only requires the accident to arise from Godsell's work. Specifically, Gallin effectively articulates that the phrase "arising out of or relating to [Godsell's] intentional acts or negligence" should be treated as an "arising out of your work" provision, which encompasses any and all Gallin activities at the premises, including its mere presence pursuant to the Agreement (see e.g., *Urbina v 26 Ct. St. Assoc., LLC*, 46 AD3d 268, 274 [1st Dept 2007] ["the term 'arising out of', in its most common sense, has been defined as originating from, incident to or having connection with" the contractor's work] [internal quotation marks and citation omitted]). Gallin then posits that the Second Indemnification Provision is triggered "purely based upon Godsell's intentional act in performing the contract at hand at the time of the accident" (NYSCEF Doc. No. 217, *Gallin memo of law in support of its cross-motion*).[2]

Gallin's argument is unpersuasive. The subject indemnification provision does not contemplate an "arising out of your work" trigger. It has two independent limiting phrases: "intentional acts or negligence." Gallin's proposed interpretation of the term "intentional acts" as encompassing Godsell's simple presence at the premises pursuant to the contract would subsume all of Godsell's activities – negligent or otherwise – and result in the "negligence" term becoming superfluous. This would essentially excise "negligence" from the contract provision. This is something the court may not do (*Vermont Teddy Bear Co., Inc. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004] [internal quotation marks and citation omitted] ["courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing"]). Accordingly, the court determines that the term "intentional act" means just that, a purposeful – i.e. intentional – act undertaken by Godsell that proximately caused the accident; not Godsell's mere presence at the worksite (see *Galgan v Brookfield Properties One WFC Co. LLC*, 2016 NY Slip Op. 32334[U], **18 [Sup Ct, NY County 2016]). In its cross-motion, Gallin does not articulate any intentional act of Godsell that would trigger this provision.[3]

Turning to the negligence prong of the indemnification provision, Gallin argues that the facts in this matter establish that Godsell was affirmatively negligent for failing to ensure that its workers were working safely, for failing to stop work for the safety of its workers, for failing to

---

[2] More specifically, Gallin argues that "plaintiff's claim unquestionably arose out of and was in connection with Godsell's performance of the work and its intentional acts in performing its work at the [Project] since the only reason the plaintiff was in the building in the first instance was because he was performing the work that Godsell contracted with Gallin to complete" (*Gallin memorandum of law in support of its cross-motion*, p. 17).

[3] Gallin argues in its reply papers that the accident arose from Godsell's intentional failure to stop work. However, Gallin cites to no specific proof establishing that Godsell made an intentional decision to not stop work. In any event, Gallin's argument, which essentially contradicts its prior argument (see fn. 2 above), is improperly raised for the first time in its reply (see e.g., *Lewis v Revello*, 172 AD3d 505, 506 [1st Dept 2019] ["since defendant improperly raised the argument for the first time in reply, plaintiff did not have any opportunity to respond"]).

clear the work area, and because plaintiff – a Godsell worker – was negligent for failing to see the debris before he stepped on it and/or failing to clear it before he began work. These claims are flatly opposed by plaintiff and by Godsell, who essentially argue that they were not responsible for cleaning the debris, that their actions otherwise comported with normal and reasonable work procedures and, therefore, they were free from any negligence or comparative negligence that would give rise to liability sufficient to trigger the indemnification provision.

Notably, each of these issues require consideration of credibility of the witnesses and the weighing of evidence to affirmatively establish Godsell's alleged negligence. Therefore, these issues are properly left to a jury to determine (see e.g., *Savall v New York City Tr. Auth.*, 173 AD3d 566, 567 [1st Dept 2019], citing *Ugarriza v Schmeider*, 46 NY2d 471, 474 [1979]). Accordingly, Gallin has failed to meet its *prima facie* burden establishing its contractual indemnification claim against Godsell. For the same reason, Godsell has failed to establish its freedom from negligence, such that it would be entitled to summary judgment dismissing this claim against it.

Godsell moves for summary judgment dismissing Tradition's contractual indemnification, common-law indemnification and contribution claims as against it. As discussed above, the common-law indemnification and contribution claims are barred by Workers' Compensation Law § 11. Accordingly, Godsell is entitled to dismissal of these claims against it.

Next, Tradition's contractual indemnification claim is predicated upon the indemnification provision found in the Gallin/Godsell Agreement. As discussed above, the indemnification provision requires a finding that Godsell performed an intentional act or was negligent with respect to the accident. Also as discussed above, questions of fact remain regarding whether Godsell (or plaintiff on behalf of Godsell), acted negligently, such that this indemnification provision would apply. Accordingly, Godsell is not entitled to summary judgment dismissing Tradition's contractual indemnification claim as against it.

Godsell also moves for summary judgment on its common-law indemnification and contribution claims as against Nead. It argues that Nead negligently created the condition that proximately caused plaintiff's accident by dropping debris in plaintiff's work area. "To establish a claim for common-law indemnification, 'the one seeking indemnity must prove not only that it was not guilty of any negligence beyond the statutory liability but must also prove that the proposed indemnitor was guilty of some negligence that contributed to the causation of the accident'" (*Pena v Intergate Manhattan LLC*, 194 AD3d 576, 578 [1st Dept 2021], quoting *Correia*, 259 AD2d at 65). "Contribution is available where two or more tortfeasors combine to cause an injury and is determined in accordance with the relative culpability of each such person" (*Godoy v Abamaster of Miami*, 302 AD2d 57, 61 [2d Dept 2003] [internal quotation marks and citations omitted]).

Here, as discussed above, Godsell has not established its freedom from negligence, such that it would be entitled to summary judgment in its favor on its common-law indemnification claim as a matter of law. As to the contribution claim, any determination on this claim is premature pending a finding of negligence against Godsell and/or Nead. Accordingly, Godsell is

not entitled to summary judgment in its favor on its common-law indemnification and contribution claims against Nead.

Godsell moves for summary judgment dismissing Gallin's second third-party claim and Tradition's third third-party claim against it for breach of contract for the failure to procure insurance (NYSCEF Doc. No. 153, *Godsell memo of law*). In support of its motion, Godsell provides a copy of the insurance policy it procured (NYSCEF Doc. No. 171, *Commercial General Liability Policy*).

Tradition does not oppose dismissal of this claim. Gallin opposes, arguing that this claim cannot be dismissed because Godsell's insurer has only accepted tender under a reservation of rights. This argument is unpersuasive. An insurance company's refusal to indemnify under a procured policy does not give rise to breach of contract for the failure to procure insurance, where the insured "fulfilled its contractual obligation to procure proper liability insurance" (*Martinez v Tishman Constr. Corp.*, 227 AD2d 298, 299 [1st Dept 1996]; see also *Perez v Morse Diesel Intl., Inc.*, 10 AD3d 497, 498 [1st Dept 2004]). Any dispute over whether the insurance company's reservation of rights is proper requires the presence of the insurer – who is not a party hereto. Accordingly, Godsell is entitled to summary judgment dismissing Gallin's and Tradition's claims against it for breach of contract for the failure to procure insurance. The parties' remaining arguments have been considered and were determined to be unavailing. For the foregoing reasons, it is hereby

**ORDERED** that Mot. Seq. 004 by Godsell Construction Corp., pursuant to CPLR 3212, seeking summary judgment dismissing the second third-party complaint as against it and the third third-party complaint as against it is granted only as to the common-law indemnification, contribution and breach of contract for the failure to procure insurance claims, but it is otherwise denied; and it is further

**ORDERED** that branch of Godsell Construction Corp motion for summary judgment in its favor on its common-law indemnification and contribution claims against fourth third-party defendant/fifth third-party defendant Nead Electric, Inc. is denied; and it is further

**ORDERED** that John Gallin & Son, Inc.'s cross-motion (related to Mot. Seq. 004), pursuant to CPLR 3212, for summary judgment in its favor on its contractual indemnification cross-claim against Godsell Construction Corp is denied; and it is further

**ORDERED** that the motion of plaintiff, George Stender (Mot. Seq. 005), pursuant to CPLR 3212, for summary judgment in his favor as to liability on his Labor Law §§ 240(1); 241(6); and 200 claims as against 32 Slipstream, LLC and RXR 32 Old Slip Owner, LLC, Tradition American Holdings, Inc., and John Gallin & Son, Inc. is granted with respect to the Labor Law § 241(6) claim predicated upon a violation of Industrial Code 12 NYCRR 23-1.7(e)(2), but it is otherwise denied; and it is further

**ORDERED** that John Gallin & Son, Inc.'s cross-motion (related to Mot. Seq. 005), pursuant to CPLR 3212, for summary judgment dismissing the complaint as against it is granted with respect to the common-law negligence and Labor Law §§ 200; 240(1); and 241(6), except

[* 13]

INDEX NO. 153353/2018

RECEIVED NYSCEF: 11/07/2024

for that portion of the section 241(6) claim predicated upon a violation of Industrial Code 12 NYCRR 23-1.7(e)(2); and it is further

**ORDERED** that the Labor Law § 240(1) claim is dismissed as against all defendants; and it is further

**ORDERED** that, within twenty (20) days after this decision and order is uploaded to NYSCEF, counsel for plaintiff shall serve a copy of this decision and order, with notice of entry, upon defendants.

This constitutes the decision and order of this court.

__November 10, 2024__

_____
HON. VERNA L. SAUNDERS, JSC

| CHECK ONE: | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|---|
| | ☐ GRANTED | ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

[* 14]