(March 27, 2003)

■ JAMES MASCIOTTA, JR., Plaintiff, v MORSE DIESEL INTERNA-
TIONAL, INC., Defendant and Third-Party Plaintiff-Appellant
and Second Third-Party Plaintiff-Appellant. W. PROPERTY RE-
SOURCES, INC., Third-Party Defendant-Respondent. W. PROP-
ERTY RESOURCES, INC., et al., Second Third-Party Defendants-
Respondents. [758 NYS2d 286] —Order, Supreme Court, New
York County (Louise Gruner Gans, J.), entered March 4, 2002,
which, to the extent appealed from as limited by the briefs,
denied Morse Diesel International, Inc.'s motion for partial
summary judgment declaring its rights to contractual indemni-
fication from third-party defendant and second third-party de-
fendant W. Property Resources, Inc., unanimously reversed, on
the law, without costs, and the motion granted.

Plaintiff James Masciotta was a carpenter employed by W.
Property Resources, Inc. (Property), a construction subcontrac-
tor on a project involving the interior renovation of a building
owned by the Dormitory Authority of the State of New York
(DASNY). DASNY contracted with Morse Diesel International,
Inc. (Morse) to manage the project, which encompassed interior
renovations of nine floors to house the City University of New
York Graduate School and a university center. According to
the DASNY-Morse contract, Morse's duties included keeping
DASNY informed of the progress of the renovation, and advis-
ing the owner of any additional work that needed to be done.
Mr. O'Reilly, a Morse project safety superintendent, testified at
his deposition that he was required to walk the site and to as-
sist contractors in complying with safety regulations; he also
held a weekly safety meeting with the subcontractors.

At his deposition, plaintiff testified that on May 20, 1999, he
was specifically assigned to do work on the third floor of the
building. Mr. Scotland, a Property foreman, instructed him to
work on certain ceiling light soffits, and provided him with a
ladder and a screw gun to perform this job. Scotland denied
that he gave plaintiff the ladder, but there was no testimony
that the ladder belonged to Morse. Further, in its contract with
Morse, Property agreed to provide all labor and materials for
its work.

Plaintiff set up the six-foot A-frame ladder himself, and he
checked to make sure that it was open and that its hinges were
locked into place before ascending it. He did not observe any
cracks, defects or substances on the ladder. He began using the
screw gun above his head to secure tracks which would hold
sheetrock for ceiling light soffits. Fifteen minutes into the
project, as he was inserting the second in a line of screws into

the track, "the ladder just kicked out" and he fell to the ground. There were no Morse employees in the area.

After separately hearing of the accident, Scotland (from Property) and O'Reilly (from Morse) both went to the third-floor site. They saw a six-foot wooden A-frame ladder lying on the ground in its open position. Neither saw any defects in the ladder, which O'Reilly testified was lying 10 to 15 feet away from where plaintiff was sitting.

In the third-party action, Morse moved for summary judgment seeking contractual indemnification from Property. Property opposed the motion, asserting that there was an outstanding factual issue as to Morse's negligence. The court denied Morse's motion, "without prejudice to a finding of Labor Law § 240 (1) liability at trial, which is covered by the subject indemnification clause." We reverse.

"A party is entitled to full contractual indemnification [for damages incurred in a personal injury suit] provided that the 'intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances' [citations omitted]" (*Drzewinski v Atlantic Scaffold & Ladder Co.*, 70 NY2d 774, 777 [1987]). Further, " 'a court may render a conditional judgment on the issue of indemnity[ ] pending determination of the primary action[ ] in order that the indemnitee [may] obtain the earliest possible determination as to the extent to which he or she may expect to be reimbursed' [citations omitted]" (*State of New York v Travelers Prop. Cas. Ins. Co.*, 280 AD2d 756, 757 [2001]). Paragraph 5 (a) of the subcontract between Morse and Property (the Indemnification Provision), provides,

"To the extent permitted by law, Subcontractor [Property] shall indemnify, defend, save and hold the Owner, the Contractor [Morse] and Architect * * * harmless from and against all liability, damage, loss, claims, demands and actions of any nature whatsoever which arise out of or are connected with, or are claimed to arise out of or be connected with:

"1. The performance of Work by the Subcontractor, or any act or omission of Subcontractor;

"2. Any accident or occurrence which happens, or is alleged to have happened, in or about the place where such work is being performed or in the vicinity thereof (a) while the Subcontractor is performing the Work, either directly or indirectly through a subcontractor or material agreement, or (b) while any of the Subcontractor's property, equipment or personnel are in or about such place or the vicinity thereof by reason of or as a result of the performance of the Work; or

"3. The use, misuse, erection, maintenance, operation or failure of any machinery or equipment (including, but not limited to, scaffolds, derricks, ladders, hoists, rigging supports, etc.) whether or not such machinery or equipment was furnished, rented or loaned by the Owner or Contractor or their officers, employees, agents, servants or others, to the Subcontractor.

"4. As used in subparagraphs 1, 2 and 3 of this paragraph 5a, subcontractor shall include its lower tier subcontractors."

Because it is undisputed that Masciotta's injuries arose out of Property's work and/or an act or omission of Property (Indemnification Provision para 5 [a] [1]); the accident happened in the area where Property's work was being performed, involved a Property employee and occurred during the performance of Property's work (Indemnification Provision para 5 [a] [2]); and the claim relates to use, misuse, erection, maintenance, operation or failure of a ladder (Indemnification Provision para 5 [a] [3]), the indemnification provision holds Property responsible to Morse for this accident (*see Brown v Two Exch. Plaza Partners*, 146 AD2d 129, 136-137 [1989], *affd* 76 NY2d 172 [1990]). "By [drafting this indemnification] clause, [Morse], anticipating an accident in which no negligence by any party can be established, [sought] to spread [its] broad, absolute, frequently vicarious liability under the Labor Law to [its] subcontractors [here, Property] regardless of fault, as each undert [ook] to perform" (*Brown, supra* at 137).

Property urges that General Obligations Law § 5-322.1* bars enforcement of the indemnification provision, because the statute declares void any agreement purporting to indemnify contractors against liability for injuries contributed to, caused by or resulting from their own negligence, whether such negligence be in whole or in part (*Itri Brick & Concrete Corp. v*

---

* General Obligations Law § 5-322.1 provides, as relevant, that, "1. A covenant, promise, agreement or understanding in, or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenances and appliances including moving, demolition and excavating connected therewith, purporting to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property contributed to, caused by or resulting from the negligence of the promisee, his agents or employees, or indemnitee, whether such negligence be in whole or in part, is against public policy and is void and unenforceable; provided that this section shall not affect the validity of any insurance contract, workers' compensation 'agreement or other agreement issued by an admitted insurer. This subdivision shall not preclude a promisee requiring indemnification for damages arising out of bodily injury to persons or damage to property caused by or resulting from the negligence of a party other than the promisee, whether or not the promisor is partially negligent."

*Aetna Cas. & Sur. Co.*, 89 NY2d 786 [1997]; *see also National Union Fire Ins. Co. of Pittsburgh v State Ins. Fund*, 266 AD2d 518 [1999]). However, the statute does "not bar enforcement of a contractual indemnity provision where the indemnitee was held strictly liable under Labor Law § 240 (1) and there was no evidence of its negligence" (*Buccini v 1568 Broadway Assoc.*, 250 AD2d 466, 468 [1998]; *see also Brown v Two Exch. Plaza Partners*, 76 NY2d 172 [1990]; *Hoelle v New York Equities Co.*, 258 AD2d 253 [1999]; *Newell v Almeter-Barry Constr. Mgt.*, 245 AD2d 1081 [1997]).

Here, as in *Brown, Hoelle, Buccini* and *Newell*, there is no evidence of Morse's active negligence or misconduct. First, there is no testimony that the ladder was owned by or supplied by Morse (*cf. State of New York v Travelers Prop. Cas. Ins. Co.*, 280 AD2d 756 [2001] [conditional grant of summary judgment on contractual indemnification claim premature where plaintiff owned equipment which may have caused the accident]). Further, plaintiff concedes that he set the ladder up himself, to complete a task assigned to him by a Property foreman (*Hoelle, supra* at 253 ["general contractor had no direct supervision and control over the manner and method of the various subcontractor's work"]; *cf. Boss v Integral Constr. Corp.*, 249 AD2d 214 [1998] [factual issue whether party seeking indemnification was responsible for placement of sheetrock which caused plaintiff to trip]). Moreover, there is no evidence that Morse had notice of any defective or unsafe condition associated with the ladder. In fact, plaintiff testified that he did not see any problems with the ladder before he ascended it, and Property and Morse employees inspected the ladder after the accident and found no sign of disrepair. Scotland even picked the ladder up and stepped onto it, hoping, unsuccessfully, to gain insight into how the accident had occurred. Finally, there is no evidence that Morse neglected any of its general supervisory responsibilities on the job site. As we stated in *Buccini*, " 'the fact that [Morse] may have dispatched persons to observe the progress and method of the work does not render it actively negligent' (*Aragon v 233 W. 21st St.*, 201 AD2d 353, 354 [1994])." (250 AD2d at 469.)

These facts are distinguishable from *Sheppard v Blitman/ Atlas Bldg. Corp.* (288 AD2d 33 [2001]), relied on by the trial court. In *Sheppard*, we upheld a finding of liability based upon the jury's finding that the general contractor was 30% liable for plaintiff's injuries and "retained more than general supervisory power over the work" (*id.* at 34). The plaintiff in *Sheppard* slipped on ice which was covered by ash, and unlike

the facts of this case, the general contractor, not the subcontractor, set up the work site safety, which, there, concerned accumulations of snow and ice. Moreover, the *Sheppard* general contractor had the ability to stop the work if a subcontractor was engaged in an improper practice (*id.*). Here, by contrast, Property, not Morse, assumed primary responsibility for the safety of its workers, and Morse played only a general supervisory role over the work of its subcontractors. Moreover, O'Reilly testified that he would alert a subcontractor's supervisor of any problem he observed, but he was not sure if he had the authority to stop a particular aspect of the work if the subcontractor disagreed as to whether it was a problem.

Property finally contends that summary judgment is precluded by Morse's alleged spoliation of evidence in failing to preserve the ladder from which the plaintiff fell. This argument should also be rejected. Plaintiff's testimony did not specify a particular defect in the ladder, and even if its contract with DASNY required Morse to preserve the ladder, Property cannot argue, as required to make a claim for sanctions due to spoliation of evidence, that Morse's failure to do so rendered Property " 'prejudicially bereft of appropriate means to [either present or] confront a claim with incisive evidence' " (*Kirkland v New York City Hous. Auth.*, 236 AD2d 170, 174 [1997]; *Chiu Ping Chung v Caravan Coach Co.*, 285 AD2d 621 [2001]; *Lane v Fisher Park Lane Co.*, 276 AD2d 136 [2000]). Concur—Buckley, P.J., Mazzarelli, Andrias and Sullivan, JJ.