■ CARLOS URBINA et al., Respondents, v 26 COURT STREET ASSOCIATES, LLC, et al., Respondents-Appellants, and R & J CONSTRUCTION CORP., Appellant-Respondent. [847 NYS2d 67]—

Judgment, Supreme Court, New York County (Carol R. Edmead, J.), entered June 8, 2005, after a jury verdict, insofar as appealed from, awarding plaintiff Carlos Urbina $1 million for past pain and suffering, $2.5 million for future pain and suffering (over 41.5 years), $5 million for future lost wages (over 27 years) and $55,000 for future medical expenses, unanimously modified, on the facts, to vacate the awards for past and future pain and suffering, and otherwise affirmed, without costs, and the matter remanded for a new trial solely as to damages for past and future pain and suffering unless plaintiffs, within 30 days of service of a copy of this order with notice of entry, stipulate to reduce the award for past pain and suffering to $700,000 and future pain and suffering to $1.5 million, and to entry of an amended judgment in accordance therewith. Judgment, same court and Justice, entered July 14, 2005, granting contractual indemnity to defendant Town Sports International, Inc. (TSI)

and 26 Court Street Associates, LLC (Court Street) against defendant R & J Construction Corp. (R & J), and dismissing the claims of TSI and Court Street against R & J for common-law indemnity and contribution, unanimously affirmed, with costs.

Plaintiffs Carlos Urbina and his wife, Lucy Nunez, commenced this action to recover damages for injuries sustained by plaintiff Urbina, an electrician, at a construction site when the plywood platform of a Baker scaffold on which he was kneeling collapsed, causing him to fall some eight feet to the concrete floor and suffer a fractured patella and other injuries. TSI, which leased the premises where the accident occurred from Court Street, the owner of the premises, was renovating the premises to open a New York Sports Club and acted as general contractor for the project. Plaintiffs commenced this action against Court Street, TSI and R & J, the drywall subcontractor, alleging causes of action for common-law negligence, violations of Labor Law §§ 200, 240 (1) and § 241 (6) and loss of consortium. TSI asserted cross claims against R & J for contractual indemnity, common-law indemnity and contribution; it also commenced a third-party action against plaintiff Urbina's employer, Absolute Electrical Contracting, Inc. (Absolute), the electrical subcontractor, seeking, inter alia, contractual indemnity. Court Street asserted cross claims against TSI for contractual indemnity, common-law indemnity and contribution. R & J brought cross claims against Court Street, TSI and Absolute for common-law indemnity and contribution. In turn, Absolute asserted cross claims for negligence and breach of warranty against R & J.

Summary judgment was granted to plaintiff Urbina pursuant to Labor Law § 240 (1) against Court Street and TSI. On a prior appeal in this action (12 AD3d 225 [2004]), this Court upheld the dismissal of plaintiff Urbina's Labor Law § 241 (6) claim against R & J and reinstated plaintiff Urbina's common-law negligence claim against R & J, holding, in the latter regard, that issues of fact were raised as to whether R & J was negligent in erecting the scaffold, precluding summary judgment in its favor. Nonetheless, plaintiff Urbina abandoned all his claims against R & J, and all his remaining claims against Court Street and TSI, and proceeded to a damages only trial. Prior to trial, Court Street and TSI each tendered its defense to Absolute, which took over their representation. In particular, Absolute's insurer appointed as counsel for Court Street and TSI the attorney who had been representing only Absolute. Pursuant to a stipulation signed on behalf of TSI by that attorney, TSI's third-party action against Absolute was dismissed with prejudice. At

trial, R & J's cross claim against Absolute was dismissed on the ground that plaintiff Urbina had not sustained a "grave injury" within the meaning of Workers' Compensation Law § 11.

After plaintiffs testified, Court Street and TSI moved for a directed verdict against R & J based upon the indemnity clause in the contract between R & J and TSI. Although it appears that Court Street never asserted a cross claim against R & J for contractual indemnity, R & J did not oppose the motion on this ground. To resolve the motion, the parties submitted a "Stipulation of Agreed Facts." According to the stipulation, the accident occurred at 2:45 P.M. after R & J's employees had left the work site, having completed their work for that day. When the platform of the Baker scaffold collapsed, plaintiff Urbina was performing electrical work required under Absolute's contract with TSI, not "dry wall/rough carpentry" work required under R & J's contract with TSI. The Baker scaffold was owned by R & J and had been erected by R & J solely for its work. When R & J's employees left the job site on the day of the accident, the scaffold was left in place for the continuation of R & J's work the next day. As for the accident itself, the stipulation provided that plaintiff Urbina testified both that "while he was kneeling down on the platform of the Baker scaffold, the plywood platform collapsed straight through the rails of the scaffold causing him to be injured," and that he "inspected the scaffold including the platform . . . before using it and thought it was okay." In addition, the parties stipulated that there was no evidence anyone had used or touched the scaffold after R & J's employees left the job site and before the accident. Finally, as to the scaffold itself, the parties stipulated that plaintiff Urbina did not have R & J's permission to use the scaffold, that TSI contended it was customary to share equipment at the job site and that R & J denied that contention.

The stipulation also set forth the indemnity provision of the contract and the relevant provisions of exhibit B to the contract setting forth the "Scope Of Work." The indemnity clause obligated R & J to "indemnify and hold TSI, the owner of the club and landlord, harmless from all claims, suits, liability, damages, losses, and expenses including reasonable attorney's fees arising out of the work performed under this contract to the fullest extent permitted by law." Under the heading "Scope Of Work," exhibit B detailed the specific carpentry/drywall work R & J was to perform (such as, "[m]etal track studs, furring strips, fasteners," "[a]coustical ceiling grid, hanging wires and tiles," "[d]rywall partitions, ceilings, soffits, fascias and porticos") and also required R & J to "[f]urnish and install all materials, equip-

ment, personnel, tools, scaffolding, layout lines, and bench-marks."

In opposing the motion for a directed verdict, R & J argued that its contractual indemnity was triggered only if the accident arose out of the work it was performing under its contract with TSI. Because plaintiff Urbina was injured while performing electrical work pursuant to the contract between Absolute and TSI for electrical work, not the drywall or carpentry work called for in its contract with TSI, R & J contended that its contractual indemnity obligation had not been triggered. Supreme Court disagreed. In an oral decision, Supreme Court, relying on *Keena v Gucci Shops* (300 AD2d 82 [2002]) and *Velez v Tishman Foley Partners* (245 AD2d 155 [1997]), ruled that R & J's contractual obligation to provide the scaffold was sufficient to trigger its indemnity obligations under the contract. We agree with Supreme Court.

R & J continues to maintain that "unless Urbina, an electrician, was injured while performing the drywall work R & J agreed to perform, no indemnity is owed to TSI." Under this cramped reading of the indemnity clause, R & J's contractual indemnity would not be triggered if, with or without negligence by R & J, a wall it was erecting collapsed and injured a worker performing the work of one of the other trades. As long as the worker struck by the collapsing wall was not performing drywall work at the time of the injury, R & J would have no indemnity obligation under the contract. R & J's position, moreover, ignores the express provision of the contract requiring it to "[f]urnish and install all . . . scaffolding" and including that work within the "Scope Of Work" to be performed. Because the liability to plaintiff Urbina "aris[es] out of" the furnishing and installing of the Baker scaffold, it "aris[es] out of the work performed under th[e] contract."

Our decision in *Masciotta v Morse Diesel Intl.* (303 AD2d 309 [2003]), is instructive. There, the plaintiff carpenter was injured when he fell from a ladder that "just kicked out" from under him. (*Id.* at 310.) Morse Diesel, the construction manager, moved for summary judgment on its claim for contractual indemnity from the plaintiff's employer, one of the construction subcontractors, pursuant to an indemnity provision that obligated the subcontractor to indemnify Morse Diesel and hold it harmless from all liability, damages, claims and actions " 'of any nature whatsoever which arise out of or are connected with, or are claimed to arise out of or be connected with: . . . [t]he use, misuse, erection, maintenance, operation or failure of any machinery or equipment' " (303 AD2d at 310-311). Just as R & J agreed

to provide all scaffolding, the subcontractor had agreed in its contract with Morse Diesel to provide all materials for its work (*id.* at 309). Although there were independent grounds under the indemnity clause to trigger the subcontractor's indemnity obligation, we held that because the plaintiff's "claim relates to use, misuse, erection, maintenance, operation or failure of a ladder . . . , the indemnification provision holds [the subcontractor] responsible to Morse for this accident" (*id.* at 311).[1]

As Supreme Court correctly recognized, R & J's position is inconsistent with *Velez v Tishman Foley Partners* (*supra*) and *Keena v Gucci Shops* (*supra*). In *Velez*, the plaintiff ironworker was injured when the cross bracing of a hoist tower gave way beneath him as he was climbing down the tower. The owner and general contractor, TFP, sought contractual indemnity from Universal, which had entered into a subcontract with it for the construction of the hoist tower. The indemnity clause obligated Universal to indemnify TFP against " 'any and all loss, damages, injury or liability . . . however caused and of whatever nature, arising directly or indirectly from the acts or omissions of [Universal] . . . in the performance of the work under this Subcontract' " (245 AD2d at 156). The fact that the plaintiff was performing work other than that required by Universal's contract played no role in our decision. Rather, because the accident occurred "when the cross-bracing of the hoist tower gave way and . . . the hoist tower was being erected by Universal at the time of the plaintiff's injuries, the accident came within the parameters of the broadly worded contractual indemnification agreement with Universal" (*id.*).

Similarly, in *Keena*, the plaintiff was injured when "the plank upon which he was walking, supplied by defendant Glenn Partition as part of its contractual undertaking to provide work site

---

1. Our decision in *Torres v Morse Diesel Intl., Inc.* (14 AD3d 401 [2005]) is also on point. The plaintiff, an employee of a roofing subcontractor, was injured when the ladder he was working on suddenly collapsed, causing him to fall. Westmont, the general roofing contractor, had subcontracted the roofing work to plaintiff's employer and had agreed in its contract with the owner to indemnify the owner and the construction manager, Morse Diesel, for all liability or injury " 'caused by, resulting from, arising out of, or occurring in connection with the execution of the [contract] Work' " (*id.* at 402). We held that Westmont's contractual indemnity was triggered because "the work plaintiff was performing . . . at the time he was injured plainly constituted 'Work' required under the [owner-]Westmont contract" (*id.* at 403). Moreover, in the course of rejecting the contention that issues of fact regarding Morse Diesel's alleged negligence precluded the granting of summary judgment to Morse Diesel on its claim for contractual indemnity, we noted that "the record shows that Westmont was contractually obligated to supply the necessary equipment for the roofing work" (*id.*).

protection, gave way" (300 AD2d at 82). We held that Glenn's contractual indemnity was triggered because Glenn "agreed in its subcontract . . . to indemnify . . . [the] owner, for 'all claims . . . arising in whole or in part and in any manner' from Glenn's 'acts, omissions, breach or default' in connection with 'any work' performed by Glenn pursuant to the subcontract" (*id.*). As the record on appeal makes clear, moreover, the plaintiff was an employee of the general contractor and was not performing the work that Glenn was required to perform at the time he was injured.

*Greco v Archdiocese of N.Y.* (268 AD2d 300 [2000]) does not require a different conclusion. In *Greco*, the plaintiff, an employee of the general contractor, fell when the step of the ladder on which he was standing broke. The ladder was owned by Peeples, the HVAC subcontractor, and the owner sought summary judgment on its claim against Peeples for contractual indemnity. We upheld the denial of summary judgment on the ground that "[t]riable issues of fact exist with respect to . . . whether plaintiff's injury arose 'out of or in connection with' the work Peeples had subcontracted to perform" (268 AD2d at 302). Nothing in our opinion states or suggests that the provision of ladders or other equipment was included within the scope of the work Peeples was required to perform under the subcontract.

Our decision in *Brown v Two Exch. Plaza Partners* (146 AD2d 129 [1989], *affd* 76 NY2d 172 [1990]) is also distinguishable. The plaintiff in *Brown* was injured by the unexplained collapse of a scaffold erected by a subcontractor, Heydt, for the use of all the trades involved in the construction project, pursuant to a subcontract with the general contractor, Fuller. An indemnity clause required Heydt to indemnify Fuller against personal injury " 'arising out of, in connection with or as a consequence of the performance of the [subcontractor's] Work and/or any act or omission of the Subcontractor or any of its subcontractors . . . as it relates to the scope of this Contract' " (*id.* at 133-134). The scaffold collapsed, however, one week after it was inspected and accepted by Fuller, which was to control its use and maintain it following its acceptance. Although Heydt had moved or straightened the scaffold some four days prior to its collapse, we rejected Fuller's contention that the accident arose out of, was in connection with or was a consequence of Heydt's erection or straightening of the scaffold. To accept that contention, "without any showing of a particular act or omission in the performance of such work causally related to the accident, would be to make Heydt a virtual insurer of the scaffold. Heydt would

be responsible for an unexplained collapse of the scaffold at a time when it had no control over its use or responsibility for its maintenance, and, as contemplated by its contract with Fuller, was not even present at the site" (*id.* at 136). By contrast, prior to the collapse of the Baker scaffold, neither Court Street nor TSI had accepted, was in possession of or was responsible for maintaining the scaffold.[2]

The extent to which the indemnity clauses in *Masciotta*, *Velez* and *Keena* are broader rather than more verbose than the indemnity clause in this case is a matter we need not address. In any event, the indemnity provision to which R & J agreed is a broad one, as it obligates R & J to indemnify TSI and Court Street against "all claims, . . . liability [and] damages . . . arising out of the work performed under th[e] contract" and contains no language limiting the scope of that obligation (*cf. People v Young*, 220 AD2d 872, 874 [1995] [construing the term "arising out of" in Executive Law § 63 (3): "the term 'arising out of', in its most common sense, has been defined as originating from, incident to or having connection with" (citation omitted)], *lv denied* 87 NY2d 909 [1995]; *United States Fire Ins. Co. v New York Mar. & Gen. Ins. Co.*, 268 AD2d 19, 21-22 [2000] ["when used in automobile exclusion clauses, the words 'arising out of the . . . use' are deemed to be broad, general, comprehensive terms ordinarily understood to mean originating from, incident to, or having connection with the use of the vehicle" (internal quotation marks and citations omitted)]). For this reason, we are not persuaded by R & J's argument that the accident did not "aris[e] out of the work" performed under the subcontract because plaintiff Urbina was not authorized by it to use the Baker scaffold. Without deciding the issue of whether a different conclusion would be appropriate if there were evidence that R & J had taken steps to prevent the use of the scaffold by employees of other trades or that plaintiff Urbina knew he was not authorized to use it, we note that there was no such evidence.

On the basis of allegedly unethical conduct by counsel for Court Street and TSI, R & J also contends that it is entitled ei-

---

2. Negligence by either Court Street or TSI in connection with the collapse of the Baker scaffold would defeat its claim for contractual indemnity (*see Pardo v Bialystoker Ctr. & Bikur Cholim, Inc.*, 10 AD3d 298, 301 [2004] [under General Obligations Law § 5-322.1, negligence by general contractor in connection with plaintiff's fall from scaffold would render unenforceable the provision of the subcontract between the general contractor and plaintiff's employer requiring the latter to provide full indemnification against all claims caused in whole or in part by its acts or omissions]). R & J does not assert any such negligence by Court Street or TSI.

ther to a new trial or to an order deeming Absolute and R & J coindemnitors of TSI with equal responsibility for satisfying plaintiff's judgment against TSI. R & J's claim of unethical conduct, however, is not preserved for review as it was not raised before the trial court. Moreover, to the extent R & J thus seeks an order that would affect Absolute adversely, we note that Absolute is not a party to this appeal and that R & J, not having appealed from the order dismissing its claim for common-law indemnity against Absolute, has no surviving claims against Absolute.

With respect to the issue of damages, plaintiff, who was 31 years old at the time of the accident, sustained a comminuted, displaced transverse fracture of the patella, as well as a tear of the lateral meniscus. Plaintiff underwent surgery on the day of the accident and was discharged the following day. Plaintiff used crutches for approximately two months following the surgery and underwent extensive physical therapy. Thereafter, a second procedure removed the surgical hardware installed during the first operation, and the surgeon repaired plaintiff's injured meniscus, and performed a chondroplasty of the patella and the anterior femur of the right knee. Following the second procedure, plaintiff continued physical therapy, took pain medication, used crutches for at least one month, and then began wearing a heavy knee brace that he still wears. Plaintiff continued to experience pain as well as clicking and popping sounds in his right knee, and a third surgical procedure was subsequently performed. Plaintiff's expert stated that future surgeries will be necessary, including at least two knee replacement procedures. Plaintiff, who now walks with a limp, is no longer able to work as an electrician and is restricted to sedentary work, and also can no longer perform household chores. In addition, plaintiff cannot walk for long periods of time, run, walk fast or play soccer.

Unquestionably, significant damages awards for both past and future pain and suffering are warranted. However, the awards for such damages as provided by the jury deviate materially from reasonable compensation (*see* CPLR 5501 [c]). Looking to awards approved in cases involving injuries similar to those sustained by plaintiff (*Reed v City of New York*, 304 AD2d 1, 7 [2003], *lv denied* 100 NY2d 503 [2003]), we conclude that the awards for past and future pain and suffering are excessive to the extent indicated above (*cf. Bridges v City of New York*, 18 AD3d 258 [2005]; *Green v City of New York*, 308 AD2d 408 [2003], *lv denied* 1 NY3d 505 [2004]; *Alvarado v City of New York*, 287 AD2d 296 [2001]; *Schultz v Turner Constr. Co.*, 278

AD2d 76 [2000]; *Cruz v Manhattan & Bronx Surface Tr. Operating Auth.*, 259 AD2d 432 [1999]; *Osoria v Marlo Equities*, 255 AD2d 132 [1998]; *Salop v City of New York*, 246 AD2d 305 [1998]). The award for future lost wages, however, is supported by the evidence. Concur—Mazzarelli, J.P., Saxe, Williams, Buckley and McGuire, JJ.