Robles v 1004-06 Gates Ave. LLC (2025 NY Slip Op 50150(U))

[*1]

Robles v 1004-06 Gates Ave. LLC

2025 NY Slip Op 50150(U)

Decided on February 12, 2025

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 12, 2025
Supreme Court, Kings County

Mario Robles, Plaintiff,

against
1004-06 Gates Avenue LLC and THE LOKETCH GROUP, INC., Defendants.
1004-06 GATES AVENUE LLC and THE LOKETCH GROUP, INC., Third-Party Plaintiffs,
against
B CONTRACTORS GROUP LLC and ROCK GROUP NY CORP., Third-Party Defendants. 
B CONTRACTORS GROUP LLC, Second Third-Party Plaintiff, 
against
SAM MAINTENANCE SERVICE INC., Second Third-Party Defendant. 
ROCK GROUP NY CORP., Third Third-Party Plaintiffs,
against
RB NY ENTERPRISES INC., Third Third-Party Defendant. 
1004-06 GATES AVENUE LLC and THE LOKETCH GROUP, INC., Fourth Third-Party Plaintiffs,
against
RB NY ENTERPRISES INC., Fourth Third-Party Defendant

Index No. 514433/17

Glen H. Shore, Esq., P.C., New York City (Ilya Murafa of counsel), for plaintiff.
Gartner & Bloom, P.C., New York City (Roy M. Anderson of counsel), for defendants.
Malapero Prisco & Klauber LLP, New York City (Paul M. Tarr of counsel), for third-party defendant / third third-party plaintiff Rock Group NY Corp.
Callahan & Fusco LLC, New York City (Chelsea S. Novelli of counsel), for third third-party defendant / fourth third-party defendant RB NY Enterprises, Inc.

Aaron D. Maslow, J.

The following e-filed papers read herein:             
NYSCEF Doc Nos.:
Notice of Motion/Order to Show Cause/
Petition/Cross Motion and Affidavits (Affirmations) Annexed 420, 422, 452-453, 536-537
Opposing Affidavits/Answer (Affirmations) 510, 568, 570, 571, 598, 600
Affidavits/ Affirmations in Reply 602, 603, 606
Upon the foregoing papers, defendants / third-party plaintiffs / fourth third-party plaintiffs 1004-06 Gates Avenue LLC (1004-06 Gates) and The Loketch Group, Inc., (Loketch) (collectively referred to as the Owner Defendants) move for an order, pursuant to CPLR 3212, granting them: (1) summary judgment dismissing plaintiff's causes of action sounding in common-law negligence and Labor Law §§ 200 and 241 (6); (2) summary judgment in their favor on their indemnification and contribution claims as against third-party defendant / third third-party plaintiff Rock Group NY Corp. (Rock Group) and third third-party defendant / fourth third-party defendant RB NY Enterprises, Inc., (RB NY); and (3) summary judgment dismissing Rock Group's counterclaims against them (motion sequence number 18).
Rock Group moves for an order, pursuant to CPLR 3212, granting it summary judgment dismissing the third-party complaint and cross-claims as against it (motion sequence number 19).
RB NY moves for an order, pursuant to CPLR 3212, granting it summary judgment dismissing the Owner Defendants and Rock Group's indemnification and contribution claims [*2]against it (motion sequence number 20).[FN1]

The Owner Defendants' motion (motion sequence number 18) is granted to the extent that: (1) plaintiff's common-law negligence and Labor Law § 200 causes of action are dismissed and plaintiff's Labor Law § 241 (6) cause of action is dismissed to the extent that plaintiff relies on Industrial Code (12 NYCRR) §§ 23-1.16; 23-1.17; 23-1.22 (c); 23-3.3(b)(4), (5); 23-5.1 (b), (c) (1), (2), (f), (g), and OSHA regulations,[FN2]
and (2) the Rock Group's counterclaims against it are dismissed as against them. The Owner Defendants' motion is otherwise denied.
Rock Group's motion (motion sequence number 19) is granted only to the extent that the Owner Defendants' third-party cause of action for breach of contract for failure to procure insurance is dismissed as against Rock Group. Rock Group's motion is otherwise denied.
RB NY's motion (motion sequence number 20) is denied.
 Background
In this action, plaintiff pleads causes of action premised on common-law negligence and violations of Labor Law §§ 200, 240 (1) and 241 (6) based on injuries he suffered on July 28, 2016, when he fell to the ground from a cross-brace support for a sidewalk bridge while attempting to remove a metal roll-up security gate on the front of a building (the Building) owned by 1004-06 Gates. In its role as developer and property manager for 1004-06 Gates, Loketch hired third-party defendant / second third-party plaintiff B Contractors Group LLC (B Contractors) as the general contractor for a renovation project relating to the Building.[FN3]
Although the record is not entirely clear as to whether they were hired by B Contractors or directly by Loketch, second third-party defendant Sam Maintenance Service Inc. (Sam Maintenance) was hired to perform demolition work, and Rock Group was hired to erect a sidewalk bridge and scaffolding. Rock Group alleges that it subcontracted the actual erection of the sidewalk bridge to RB NY.[FN4]
Plaintiff was employed by Sam Maintenance as a demolition laborer.
According to plaintiff's deposition testimony, on the date of the accident, plaintiff's supervisor, who plaintiff knew as Benzi, instructed plaintiff and three coworkers to remove a metal roll-up gate from the front of the Building. Benzi did not give plaintiff any equipment with [*3]which to perform this work other than a Sawzall,[FN5]
a handheld electric saw that can be used to cut metal. After Benzi left the jobsite, plaintiff, who had not been provided with a ladder or scaffold to access the top of the metal gate, climbed up the supports of the sidewalk bridge and sat on a metal bar that served as a cross-brace in order to cut the gate with the Sawzall. Plaintiff estimated that the cross-brace was approximately 20 feet above the ground.[FN6]
Using both hands to hold the Sawzall, plaintiff began making a cut, but as he was doing so, he felt a tremor that caused plaintiff to fall backwards off of the cross-brace to the ground below. As plaintiff fell, he let go of the Sawzall, which likewise fell and thereafter landed on plaintiff's arm causing a cut. There was no cover over the blades of the saw, which plaintiff asserted were still moving when the saw struck his arm.
Although plaintiff stated at his first deposition, held on July 31, 2018, that the tremor that caused him to fall involved a movement of the bar on which he was sitting (Plaintiff's 7/31/18 tr at 34, lines 14-20; at 74, lines 18-25; at 75, line 2), he made no mention of such movement at his second deposition, held on April 4, 2022. At this second deposition, plaintiff stated that he fell because, "[t]he saw got caught on the metal, and then I felt the saw making a tremor or shaking, and that made me lose my balance, and then I fell down" (Plaintiff's 4/4/22 tr at 128, lines 14-17) and that no part of the scaffolding or sidewalk bridge collapsed (Plaintiff's 4/4/22 tr at 129, lines 23-25; at 130, lines 2-3). No one at this second deposition, however, asked plaintiff if the sidewalk bridge moved at the time of the accident or if movement of the sidewalk bridge played a role in the accident.
In his non-party deposition testimony, plaintiff's coworker, Luis Gonzalez stated, similarly to plaintiff's testimony, that Benzi had directed him, plaintiff, and two other Sam Maintenance coworkers to remove the gate. Plaintiff and one of his coworkers thereafter climbed up onto the sidewalk bridge. It was plaintiff who was going to use the Sawzall to cut the gate and the coworker was going to hold the metal pieces after plaintiff cut them. As this was happening, Gonzalez and another coworker stayed on the ground to keep pedestrians from tripping over their equipment. Although Gonzalez did not see what caused plaintiff to fall, he observed that plaintiff had already sustained a cut before he fell.
Prabhjit Singh, Rock Group's general manager, testified at his deposition, that Rock Group did some of its own assembly and disassembly of scaffolds and sidewalk bridges, but it also subcontracted this assembly and disassembly work to various subcontractors, including RB NY. When asked if he was familiar with the job at the Building, Singh testified that "I don't remember a hundred percent, but we did a job over there I believe" (Singh Tr. at 29, lines 14-17). Singh asserted that that Rock Group subcontracted the actual installation work at the Building to RB NY. While Rock Group had a master agreement with RB NY, Singh was not aware of any invoices or other paperwork prepared by Rock Group relating to RB NY performing the work for this job and stated that Rock Group's communications with RB NY [*4]regarding its jobs was done by telephone or by texts. Singh, however, asserted that Rock Group should have in its possession an invoice from RB NY for the work it completed. Despite this assertion regarding the invoice, Rock Group did not submit any such invoice in support of its motion. According to Singh, Rock Group did not have a person present at a job site when RB NY did the installation work and it did not inspect RB NY's work when the job was completed. Singh himself did not recall when RB NY performed the work at the Building. Rock Group, however, did submit its unsigned proposal for the sidewalk bridge work, which is dated February 3, 2016 (Sidewalk Bridge Proposal), and a copy of an "Inspection Letter" dated February 25, 2016 which stated that the shed had been installed.
Although Romel Balbuena, RB NY's owner/president, testified at his deposition that RB NY entered into the master agreement with Rock Group and did over 100 jobs for Rock Group, he had no recollection of RB NY performing work at the Building site. In addition, Balbuena stated that RB NY had no records relating to its work for Rock Group, as he disposed of RB NY's records at some point after 2016, when RB NY's relationship with Rock Group had ended and he had shut down RB NY's business. 
Early in the course of this action, plaintiff moved for partial summary judgment in his favor with respect to liability on his Labor Law §§ 240 (1) and 241 (6) causes of action. The court (Toussaint, J), in a shortform order dated April 3, 2019, denied plaintiff's motion, finding that there were issues of fact relating to the happening of the accident that call into question plaintiff's credibility. The court also noted that the affidavits of non-party witnesses submitted by plaintiff did not have the required Spanish language version of the affidavits or the translators' affidavits appended to them and that the Owner Defendants had not had an opportunity to depose the non-party witness Luis Gonzalez. 

Discussion
Plaintiff's Causes of Action
Under Labor Law § 241 (6), an owner, general contractor or their agent may be held vicariously liable for injuries to a plaintiff where the plaintiff establishes that the accident was proximately caused by a violation of an Industrial Code section stating a specific positive command that is applicable to the facts of the case (see Rizzuto v L.A. Wenger Contr. Co., 91 NY2d 343, 349-350 [1998]; Lopez v Kamco Servs, LLC, 231 AD3d 1142, 1144 [2d Dept 2024]). "In order to establish prima facie entitlement to summary judgment, a defendant must show that the plaintiff failed to identify a section of the Industrial Code that was allegedly violated, that any such section is insufficiently specific to support liability or is inapplicable to the facts of the case, or that the defendant complied with the requirements of the identified provision" (Lopez, 231 AD3d at 1144 [internal quotation marks omitted]; Gonzalez v City of New York, 227 AD3d 958, 960 [2d Dept 2024]). In his bill of particulars here, plaintiff relies on Industrial Code (12 NYCRR) §§ 23-1.12 (c); 23-1.16; 23-1.17; 23-1.22 (c); 23-3.3 (b) (4), (5); 23-5.1 (b), (c) (1) (2), (f), (g), and OSHA regulations in support of his section 241 (6) cause of action.
In moving, the Owner Defendants have demonstrated that Industrial Code (12 NYCRR) §§ 23-1.22 (c); 23-3.3 (b) (4), (5); 23-5.1 (b), (c) (1) (2), (f), (g), are insufficiently specific, inapplicable to the facts of the case, or were not violated. In addition, OSHA violations may not be relied upon as a basis for a Labor Law § 241 (6) cause of action (see Alberto v DiSano Demolition Co., Inc., 194 AD3d 607, 608 [1st Dept 2021]; Vernieri v Empire Realty Co., 219 AD2d 593, 598 [2d Dept 1995]). Plaintiff, who has not addressed these sections in his opposition [*5]papers, has abandoned his reliance thereon (see Debennedetto v Chetrit, 190 AD3d 933, 936 [2d Dept 2021]). While plaintiff does address Industrial Code (12 NYCRR) §§ 23-1.16 (addressing standards for safety belts) and 23-1.17 (addressing standards for life nets), plaintiff's own deposition testimony, in which he stated that he was provided with no such devices, demonstrates that those sections are inapplicable here (see Venegas v Shymer, 201 AD3d 1001, 1003 [2d Dept 2022], lv denied 41 NY3d 902 [2024]; Ramirez v Metropolitan Transp. Auth., 106 AD3d 799, 801 [2d Dept 2013]; Forschner v Jucca Co., 63 AD3d 996, 998-999 [2d Dept 2009]). The Owner Defendants are thus entitled to summary judgment dismissing the section 241 (6) cause of action to the extent that it is premised on violations of Industrial Code (12 NYCRR) §§ 23-1.16; 23-1.17; 23-1.22 (c); 23-3.3 (b) (4), (5); 23-5.1 (b), (c) (1) (2), (f), (g), and OSHA regulations.
On the other hand, the Owner Defendants have failed to demonstrate their entitlement to dismissal of the Labor Law § 241 (6) cause of action with respect to Industrial Code (12 NYCRR) § 23-1.12 (c) (1), which requires that portable, power-driven, hand-held saws be provided with guards to protect the operator from coming in contact with the saw's blades.[FN7]
Even if the Owner Defendants are correct that the bill of particular's reference to section 23-1.12 (c) is insufficient to identify the subsection of the Industrial Code provision relied upon by plaintiff, under the circumstances here, plaintiff properly asserted that section 23-1.12 (c) (1) was violated for the first time in his opposition papers (see Shaw v Scepter, Inc., 187 AD3d 1662, 1665 [4th Dept 2020]; Doto v Astoria Energy II, LLC, 129 AD3d 660, 664 [2d Dept 2015]).
On the merits, the Owner Defendants argue that hand-held reciprocating saws, commonly referred to as "Sawzalls,"[FN8]
such as the saw plaintiff was using at the time of the accident, do not fall within the requirements of Industrial Code (12 NYCRR) § 1.12 (c) (1) because there is no cognizable way a guard could be installed to cover the blade of such a saw, no such saw is manufactured with such a guard, and no such saw has a "base plate" to which a guard could be installed within the meaning of that section. The Owner Defendants, however, only rely on counsel's arguments made in their brief, and have failed to submit evidentiary proof, such as expert affidavits, addressing the nature of such reciprocating saws. To the extent that this court can consider counsel's assertions regarding the nature of such saws, these assertions have been expressly rejected by the Appellate Division, First Department in Kelmendi v 157 Hudson St., LLC, (137 AD3d 567 [1st Dept 2016]). In Kelmendi, the plaintiff was injured by while using an electric hand-held reciprocating saw (id. at 568), and the court stated that,
"Defendant, however, cannot avoid its duty to comply with section 23-1.12 (c) (1) by [*6]asserting that the saw used by plaintiff had no base plate and could not accommodate a self-adjusting guard. Section 23-1.12 (c) (1) obligated defendant to ensure that the "power-driven, hand-operated saw" provided to plaintiff to perform his job was secured with guard plates to cover the saw blade. As the motion court observed, "To interpret the regulation in any other manner . . . would be to ineffectualize the regulation because employers, owners and contractors would only use tools that would minimize their liability." Accordingly, we find that Industrial Code (12 NYCRR) § 23-1.12 (c) (1) is applicable to this case as a matter of law" (Kelmendi, 137 AD3d at 569).
Given that there is no contrary holding from the Second Department or any other Department of the Appellate Division, this court is bound by the First Department's holding in Kelmendi (see Mountain View Coach Lines, Inc. v Storms, 102 AD3d 663, 664 [2d Dept 1984]). This court is thus compelled to find that section 23-1.12 (c) (1) applies to the saw plaintiff was using at the time of the accident. As such, the portion of the Owner Defendants' motion addressed to Labor Law § 241 (6) must be denied to the extent that plaintiff relies upon Industrial Code (12 NYCRR) § 23-1.12 (c) (1).
Turning to plaintiff's common-law negligence and Labor Law § 200 causes of action, plaintiff makes no allegation that the accident occurred as the result of a dangerous property condition, and, moreover, the record before the court amply demonstrates that the accident occurred as a result of the method and manner of the work (see Turgeon v Vassar College, 172 AD3d 1134, 1136 [2d Dept 2019], lv denied 34 NY3d 902 [2019]; Poulin v Ultimate Homes, Inc., 166 AD3d 667, 672-673 [2d Dept 2018]). Further, the Owner Defendants have demonstrated their prima facie entitlement to dismissal of the common-law negligence and section 200 causes of action under the means and method theory of liability through the deposition testimony of plaintiff and other witnesses in the record to the effect that plaintiff's work was exclusively supervised and controlled by Sam Maintenance (see Wilson v Bergon Constr. Corp., 219 AD3d 1380, 1383 [2d Dept 2023]; Kefaloukis v Mayer, 197 AD3d 470, 471 [2d Dept 2021]; Lopez v Edge 11211, LLC, 150 AD3d 1214, 1215-1216 [2d Dept 2017]). As plaintiff has not addressed the common-law negligence and section 200 causes of action in his opposition papers, plaintiff has failed to demonstrate an issue of fact in this respect and the Owner Defendants are thus entitled to summary judgment dismissing these causes of action.
Third-Party Issues
Initially, through the above noted evidence showing that they were not negligent and that they did not supervise or control plaintiff's work, the Owner Defendants have demonstrated their prima facie entitlement to summary judgment dismissing Rock Group's contribution and common-law indemnification claims as against the Owner Defendants (see Debennedetto, 190 AD3d at 939; Cutler v Thomas, 171 AD3d 860, 8861-862 [2d Dept 2019]; see also McCarthy v Turner Constr., Inc., 17 NY3d 369, 377-378 [2011]). As Rock Group has failed to identify any factual issues warranting denial of this aspect of the Owner Defendants' motion, the Owner Defendants are entitled to summary judgment dismissing Rock Group's contribution and common-law indemnification claims against them.
The court finds that the portions of the Owner Defendant's and Rock Group's respective motions addressed to the Owner Defendants' indemnification claims must be denied as they have each failed to demonstrate the absence of factual issues. Initially, the Owner Defendants' have [*7]failed to demonstrate that either of the Loketch Group contracts with Rock Group containing the indemnification provisions was in effect as of the accident date. In this respect, the accident date was July 28, 2016 but the subcontract is dated November 17, 2016 (11/17/16 Agreement) and the subcontract rider is dated January 26, 2017 (1/26/17 Rider), and neither agreement contains any express language suggesting that they were intended to apply retroactively (see Zalewski v MH Residential 1, LLC, 163 AD3d 900, 901-902 [2d Dept 2018]; Barrett v Magnetic Constr. Group Corp., 149 AD3d 1022, 1024 [2d Dept 2017]; Mikulski v Adam R. West, Inc., 78 AD3d 910, 912 [2d Dept 2010]).[FN9]

Even assuming that the broadly worded "arising" or "resulting" from the work indemnification language contained in the respective indemnification provisions of these agreements (11/17/26 Agreement, Other Conditions ¶¶ 13 and 20; 1/26/17 Rider ¶ 1) are applicable retroactively, the Owner Defendants have failed to demonstrate, prima facie, that the accident arose or resulted from Rock Group's work. Although plaintiff asserted at his first deposition that the movement of the cross-brace on which he was sitting contributed to his fall from the sidewalk bridge, his testimony at his second deposition, which makes no mention of the movement of the cross-brace, suggests that the sidewalk bridge may not have contributed to his fall. Under such circumstances, the sidewalk bridge would have only served as the situs of the injury and the accident cannot be deemed to have arisen out of Rock Group's work (see Worth Constr. Co., Inc. v Admiral Ins. Co., 10 NY3d 411, 416 [2008]; Stout v 1 E. 66th Corp., 90 AD3d 898, 903 [2d Dept 2011]; Bovis Lend Lease LMB Inc. v Garito Contr., Inc., 65 AD3d 872, 874 [1st Dept 2009], lv dismissed 13 NY3d 878 [2009], appeal withdrawn 14 NY3d 884 [2010]; Brown v Two Exch. Plaza Partners, 146 AD2d 129, 135-136 [1st Dept 1989], affd 76 NY2d 172 [1990]). Moreover, assuming that the sidewalk bridge did in fact move, the Owner Defendants have not addressed whether this movement was the result of a defect with the sidewalk bridge. It also appears that work on the sidewalk bridge was completed months before the accident and any maintenance obligation imposed on Rock Group, which was not present on the jobsite after its installation,[FN10]
would have required notice from the general contractor or the Owner Defendants. As such, for the accident to have arisen from Rock Group's work, the Owner Defendant's would have to show that any defect with the sidewalk bridge resulted from the initial installation of the sidewalk bridge or a failure in any maintenance obligation of Rock Group  showings that the Owner Defendants have failed to make here (see Stout, 90 AD3d at 903; Brown, 146 AD2d at 135-136; cf. McDonnell v Sandaro Realty, Inc., 165 AD3d 1090, 1097 [2d Dept 2018]). 
Turning to Rock Group's contentions, it has failed to demonstrate, prima facie, that the 11/17/26 Agreement and the 1/26/17 Rider were not intended to apply retroactively. Although [*8]the 11/17/26 Agreement and the 1/26/17 Rider do not contain any express language regarding retroactivity, the inclusion of the reference to the work contained in the Sidewalk Bridge Proposal may allow an inference of retroactive intent (see Barrett, 149 AD3d at 1024-1025; see also Lorica v Krug, 195 AD3d 1194, 1096-1097 [3d Dept 2021]). Rock Group has also failed to demonstrate, prima facie, that plaintiff's accident was unrelated to a defect with the sidewalk bridge present at the time of its installation. Singh himself testified that he did not inspect the sidewalk bridge after it was installed, and Rock Group has pointed to only limited evidentiary proof addressing the adequacy of the sidewalk bridge (see Alvarez v Colgate Scaffolding & Equip. Corp., 68 AD3d 583, 584 [1st Dept 2009]).[FN11]
Notably, in this respect, Rock Group cannot meet its prima facie burden by pointing to gaps in the Owner Defendants' proof, but rather must affirmatively establish the merit of its claim or defense, which it has not done here (see C.M. v West Babylon Union Free Sch. Dist., 231 AD3d 809, 810 [2d Dept 2024]). Rock Group's further argument that the cross-brace was not intended to be used as a work platform is not conclusive, since such use, while not intended, is certainly a foreseeable consequence of installing the sidewalk bridge (see Alvarez, 68 AD3d at 684-685; Urbina v 26 Ct. St. Assoc., LLC, 46 AD3d 268, 274 [1st Dept 2007]). Accordingly, Rock Group has failed to demonstrate its prima facie entitlement to dismissal of the Owner Defendants' contractual indemnification claim (see McDonnell, 165 AD3d at 1097; Urbina, 46 AD3d at 271-274; see also Guevara-Ayala v Trump Palace/Parc LLC, 205 AD3d 450, 452 [1st Dept 2022]).
Many of these same factual issues likewise require denial of the portion of the Owner Defendants and Rock Group's motions addressed to the Owner Defendants' common-law indemnification claims (cf. Alvarez, 68 AD3d at 684-685). Additionally, although Rock Group would be entitled to dismissal of the common-law indemnification claim if it, as asserted, subcontracted the actual installation of the sidewalk bridge to RB NY (see McCarthy, 17 NY3d at 378), this court finds that Singh's conclusory testimony that Rock Group subcontracted the actual installation and its supervision to RB NY is insufficient to demonstrate that fact as a matter of law. Notably, Singh stated that Rock Group, at times, did its own installation work and, when Singh was asked if he remembered the project, his response was somewhat equivocal. Additionally, Singe remembered few details about the work or when the work was done and Rock Group failed to provide any invoices or other documentation showing that RB NY performed this specific job.
The portion of the Owner Defendants' motion seeking summary judgment in their favor on their contribution claims against Rock Group is denied as a party is only entitled to recover on a contribution claim upon a jury determination of apportionment of damages and the payment of damages in excess of that party's proportionate share of the judgment (see Klinger v Dudley, 41 NY2d 362, 369 [1977]; CPLR 1401, 1402). The factual issues with respect to Rock Group's negligence require denial of the portion of Rock Group's motion seeking dismissal of the Owner Defendant's contribution claims (see Romano v New York City Tr. Auth., 213 AD3d 506, 508 [1st Dept 2023]; Randazzo v Consolidated Edison Co. of NY, Inc., 177 AD3d 796, 798 [2d Dept [*9]2019]; State of New York v Defoe Corp., 149 AD3d 889, 890 [2d Dept 2017]).
On the other hand, Rock Group has demonstrated its prima facie entitlement to summary judgment dismissing the Owner Defendants' breach of contract for failing to obtain insurance claim by submitting a copy of the policy it obtained that contains a blanket additional insured endorsement that appears to facially comply with the insurance procurement requirements of the contract (see Langer v MTA Capital Constr. Co., 184 AD3d 401, 402-403 [1st Dept 2020]; Perez v Morse Diesel Intl., Inc., 10 AD3d 497, 498 [1st Dept 2004]; see also Kassis v Ohio Cas. Ins. Co., 12 NY3d 595, 599-600 [2009]). As the Owner Defendants have not addressed the insurance procurement claim in their opposition papers, this court grants the portion of Rock Group's motion seeking dismissal of the Owner Defendant's breach of contract claim against Rock Group. 
The court turns to the portion of the Owner Defendant's motion seeking summary judgment on its contractual indemnification, common-law indemnification and contribution claims as against RB NY. Regarding the contractual indemnification claim, this court finds that the Owner Defendants are intended third-party beneficiaries of Rock Group and RB NY's blanket "Hold Harmless" agreement (Blanket Agreement), which provides, as is relevant here, that RB NY must indemnify "owner(s)" their "representative" and "agents" for claims "arising in whole or in part and in any manner frominjury and/or death of person . . . resulting from theacts, omissions, breach or default of [RB NY], its officers, directors, agents,employees and subcontractors (see Garica v Black Sea Properties, LLC, 227 AD3d 1486, 1489 [4th Dept 2024]; Beasock v Canisius Coll., 126 AD3d 1403, 1404 [4th Dept 2015]). Nevertheless, the factual issues noted above with respect to the Owner Defendants' contractual claim as against Rock Group as well as factual issues as to whether RB NY was hired to perform the work at issue require denial of the portion of Owner Defendants' motion seeking summary judgment on their contractual indemnification claim as against RB NY. These same factual issues likewise require denial of the portion of the Owner Defendants' motion seeking summary judgment on their common-law indemnification claim. The contribution claim must likewise be denied, because, as discussed above,a party is only entitled to recover on a contribution claim upon a jury determination of apportionment of damages and the payment of damages in excess of that party's proportionate share of the judgment (see Klinger, 41 NY2d at 369; CPLR 1401, 1402).
Contrary to RB NY's contentions, its motion for summary judgment is untimely as it was made more than 60 days after the filing of the note of issue (see Kings County Supreme Court Uniform Civil Term Rules, part C, rule 6; CPLR 3212 [a]; Souffrant v M&K Real Estate Assoc., LLC, 225 AD3d 914, 915 [2d Dept 2024]). Further, in moving, it has failed to identify any grounds constituting good cause warranting consideration of its untimely motion (see Paredes v 1668 Realty Assoc., LLC, 110 AD3d 700, 702 [2d Dept 2013]; Kings County Supreme Court Rules for Part 2, Part II, § 24).[FN12]
 Nevertheless, this court may address the merits of the portions of the motion seeking dismissal of the Owner Defendants' claims for contractual indemnification, common-law indemnification and contribution since the grounds of RB NY's motion on those issues are nearly identical to those raised by the Owner Defendants as part of their timely motion (see Lewinski v City of New York, 229 AD3d 456, 458 [2d Dept 2024]; [*10]Parades, 110 AD3d at 702). On the other hand, as the grounds relevant to the portion of RB NY's motion seeking dismissal of Rock Groups' claims against it are not otherwise before the court, the court declines to address them and denies that portion of the motion as untimely (see Wittenberg v Long Is. Power Auth., 225 AD3d 730, 732-733 [2d Dept 2024]; Parades, 110 AD3d at 702). 
Although the court can consider the merits of RB NY's motion with respect to the Owner Defendants' contractual indemnification, common-law indemnification and contribution claims, this court finds that RB NY, in view of the factual issues relating to its involvement in building the sidewalk bridge and a possible defect with the sidewalk bridge, has failed to demonstrate its prima facie entitlement to summary judgment dismissing those claims. RB NY's motion in this respect must be denied regardless of the sufficiency of the Owner Defendants' opposition papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). 
This constitutes the decision and order of the court.

Footnotes

Footnote 1:The court previously granted motions to strike pleadings and/or for default judgments as against third-party defendant/second third-party plaintiff B Contractors Group LLC (NY St Cts Elec filing [NYSCEF] Doc No. 298) and second third-party defendant Sam Maintenance Service Inc. (NY St Cts Elec filing [NYSCEF] Doc No. 257).

Footnote 2:This portion of the Owner Defendants' motion is denied to the extent that plaintiff's Labor Law § 241 (6) cause of action is premised on Industrial Code (12 NYCRR) § 23-1.12 (c).

Footnote 3:Loketch's deposition witness testified that B Contractors also operated under the name B Manage.

Footnote 4:Although the Owner Defendants' deposition witness testified that B Maintenance hired the subcontractors, this witness also conceded that Loketch also had written agreements with Sam Maintenance and Rock Group. 

Footnote 5:Sawzall is the named used by the Milwaukee Tool Company for its version of a hand-held reciprocating saw (see 
https://www.milwaukeetool.com/Products/Power-Tools/SAWZALL-Reciprocating-Saws/SAWZALLS).

Footnote 6:Plaintiff's coworker, Luis Gonzalez, testified at his non-party deposition that plaintiff was approximately 11 feet above the ground.

Footnote 7:Industrial Code (12 NYCRR) § 23-1.12 (c) (1) provides that, "[e]very portable, power-driven, hand-operated saw which is not provided with a saw table, except chain saws and circular brush saws, shall be equipped with a fixed guard above the base plate which will completely protect the operator from contact with the saw blade when the saw is operating and with a movable self-adjusting guard below the base plate which will completely cover the saw blade to the depth of the teeth when such saw blade is removed from the cut."

Footnote 8:As stated previously, "Sawzall" is the named used by the Milwaukee Tool Company for its version of a hand-held reciprocating saw (see 
https://www.milwaukeetool.com/Products/Power-Tools/SAWZALL-Reciprocating-Saws/SAWZALLS).

Footnote 9:To the extent that the terms of the unsigned Sidewalk Bridge Proposal, dated February 3, 2016, for the installation of the sidewalk bridge may deemed binding (see Barrett, 149 AD3d at 1024), it does not contain an indemnification provision favoring the Owner Defendants.

Footnote 10:Although Singh could not recall when the work on the sidewalk bridge was completed, the above noted "Inspection Letter" dated February 25, 2016, the admissibility of which has not been challenged by the Owner Defendants, indicates that the work had been completed at some point in February 2016.

Footnote 11:The limited testimony from Singh and the Owner Defendants' representative that they were unaware of any complaints regarding defects with the sidewalk bridge and plaintiff's testimony that he did not notice the cross-brace move before the accident, while relevant to the issue, does not make out a prima facie showing.

Footnote 12:A court has the authority to deny a motion on this ground sua sponte (see Baram v Person, 205 AD3d 470, 470-471 [1st Dept 2022]).